NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 25 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LAURA A. WESSELIUS,

          Plaintiff-Appellant,

  v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

          Defendant-Appellee.

No.   20-35386

D.C. No. 2:19-cv-00700-JRC

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
J. Richard Creatura, Magistrate Judge, Presiding

Argued and Submitted October 5, 2021
Seattle, Washington

Before:  PAEZ, M. SMITH, and NGUYEN, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ

Laura Wesselius appeals from the district court's judgment affirming the

Commissioner of Social Security's denial of disability benefits for the period

beginning January 7, 2009.  We have jurisdiction under 28 U.S.C. § 1291 and 42

U.S.C. § 405(g), and we affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

The district court's decision is reviewed de novo, and the Administrative Law Judge's (ALJ) decision will be overturned only if it "contains legal error or is not supported by substantial evidence." *Ford v. Saul*, 950 F.3d 1141, 1154-55 (9th Cir. 2020) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

1. Substantial evidence supports the ALJ's decision to give little weight to the opinions of examiners Dr. Lewis[1], Dr. McDuffee, and Dr. Wilkinson. When an examiner's opinion is contradicted by another doctor, as was the case here, the opinion can only be rejected for "specific and legitimate reasons." *Ford*, 950 F.3d at 1155 (citation omitted).

The ALJ's credibility determination was based in part on his finding that these opinions were "inconsistent with [Wesselius's] relatively benign longitudinal mental status findings during appointments." The ALJ reviewed the findings from mental status exams administered during appointments roughly every 3-4 months over a period of nine years, between 2009 and 2018. The ALJ found that these mental status exams often showed normal mood/affect, no acute distress, appropriate speech, logical thought processes, without tangential thinking, normal

---

[1] The ALJ considered Dr. Lewis's 2009 opinion separately, and we discuss the ALJ's treatment of that opinion below.

thought content, without suicidal/homicidal ideation, psychosis, or paranoia, full alertness/orientation, adequate attention/concentration, intact recent/remote memory, appropriate fund of knowledge, and fair insight/judgment. The ALJ found these relatively normal emotional, cognitive, and behavioral findings inconsistent with the conclusions of Drs. Lewis, McDuffee, and Wilkinson that Wesselius suffered from marked or severe impairments in these areas. Beyond this general inconsistency, the ALJ also identified specific inconsistencies between the opinions of Drs. Lewis, McDuffee, and Wilkinson and results from contemporaneous mental status testing.

The ALJ's comparison with contemporaneous and longitudinal mental status exams was a specific and legitimate reason to discount the opinions of Drs. Lewis, McDuffee, and Wilkinson. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that medical opinions can be discounted if "unsupported by the record as a whole … or by objective medical findings" (citation omitted)). These inconsistencies were not an artifact of cherry-picking evidence, as the dissent suggests. The ALJ specifically recognized that these exams reflected "signs of depression and anxiety" but nevertheless concluded that they "have generally been unremarkable." Indeed, the ALJ's findings were supported by a broad set of mental status exams covering the entire relevant time period. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error

3

for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (citations omitted)).

The mental status exams alone provide substantial evidence to support the ALJ's decision to give little weight to the opinions of Drs. Lewis, McDuffee, and Wilkinson. Any other errors with the ALJ's treatment of their opinions are therefore harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence supporting the ALJ's conclusions on … credibility and [any] error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." (citation and quotation marks omitted)).

2. The ALJ also did not err in giving little weight to the opinions of counselors Angela Cole and Janelle Gauthier. Because counselors are not considered acceptable medical sources under the applicable regulations, *see* 20 C.F.R. § 404.1502(a)(2), 1513, an ALJ may discount testimony from such sources with "reasons germane to each witness for doing so," *Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted), *superseded by regulation on other grounds*). The ALJ determined that the marked and severe limitations identified by counselors Cole and Gauthier were inconsistent with the same benign mental status findings

4

discussed above. The ALJ also determined that their opinions were either unsupported by, or inconsistent with, contemporaneous mental status testing. The ALJ thus provided sufficient germane reasons for discounting the opinions of counselors Cole and Gauthier. *See Coleman*, 979 F.3d at 757 (holding that opinions of other sources can be discounted where the "full medical record casts doubt on the severity of the limitations assessed by these sources").[2]

3. Likewise, the ALJ did not err in finding that Wesselius's own testimony was not credible. Without "evidence of malingering," an ALJ can only reject a claimant's testimony with "specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015 (citations omitted). Here, however, the ALJ did find evidence of malingering. Specifically, the ALJ pointed to clinical indications from an April 2012 psychological examination that "raised concerns that she was over-report[ing] her symptoms…." The ALJ also pointed to inconsistencies between Wesselius's statements on different occasions regarding her performance and placement in school, her criminal history, and her ability to perform daily activities. Accordingly, substantial evidence supports the ALJ's determination that Wesselius's testimony was not credible. *See Carmickle*, 533 F.3d at 1160 (clear

---

[2] Wesselius offers no specific and distinct arguments regarding the ALJ's failure to discuss the opinions of Dr. Sattar, Dr. Rubens, Dr. Allender, and Ms. Foote. Accordingly, any argument regarding these witnesses is forfeited. *See Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004) (citation omitted).

and convincing standard does not apply when there is affirmative evidence of malingering (citations omitted)).

4. Nor did the ALJ err in giving little weight to the testimony of Wesselius's mother, Barbara Sorensen. The ALJ identified inconsistencies between Sorensen's statements about Wesselius's ability to perform daily activities during the relevant time period. *See Valentine v. Comm. Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (internal inconsistency with earlier statement can be a germane reason for rejecting third-party witness's later statement).

5. The ALJ gave only partial weight to Dr. Lewis's 2009 opinion and the opinion of Dr. Kellogg, another examiner. Even if the ALJ had erred in partially discounting those opinions, any error was harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162). Dr. Lewis's 2009 opinion only reflected moderate cognitive and social limitations, and Dr. Kellogg opined that Wesselius's limitations did not prevent her from performing daily activities or impair her memory or cognitive functioning. The ALJ found that Wesselius had moderate cognitive and social impairments, and the residual functional capacity was limited to "simple, repetitive tasks," and "occasional, superficial interaction with the general public" as well as no coordination with coworkers. Accordingly, the ALJ's partial discounting of Dr. Lewis's 2009

opinion and Dr. Kellogg's opinion did not affect the residual functional capacity determination, and any error was therefore inconsequential. *See Molina*, 674 F.3d at 1115.

6. The ALJ did not err in giving little weight to the opinion of Dr. Ballard. Like an examining physician, a treating physician's opinion can be rejected for "specific and legitimate reasons" if, as here, that opinion is contradicted by another doctor. *See Ford*, 950 F.3d at 1154 (citation omitted). In June 2011, Dr. Ballard opined that Wesselius could only stand for 2 hours and sit for 2 hours in an eight-hour workday. In April 2012, Dr. Ballard opined that Wesselius had a medically determinable physical condition that was expected to impair work function. The ALJ discounted Dr. Ballard's opinions, finding them "conclusory and no[t] accompanied by any narrative explanation." That is a reasonable characterization of Dr. Ballard's opinions, and it is an adequate rationale for discounting those opinions that is supported by substantial evidence. *See Ford*, 950 F.3d at 1155 ("[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." (quoting *Molina*, 674 F.3d at 1111)).

7. In light of the foregoing, the ALJ's findings regarding Wesselius's residual functional capacity are supported by substantial evidence, and the ALJ did not err in finding Wesselius not disabled on this record.

7

**AFFIRMED.**

*Laura Wesselius v. Kilolo Kijakazi*, No. 20-35386

Paez, J., concurring in part and dissenting in part:

I concur in parts 2-6 of the court's disposition. As I explain below, I respectfully dissent from part 1.

Although our standard of review of decisions by an Administrative Law Judge ("ALJ") to deny benefits is deferential, we cannot affirm a decision that is based on merely "a few isolated instances of improvement" in an applicant's condition rather than evidence of a sustained recovery. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). As we have repeatedly emphasized, ALJs may rely on examples from the record to support their determinations, but only if "the data points they choose . . . in fact constitute examples of a broader development." *Id*. at 1018. It is an error for an ALJ to find that an applicant's condition has improved without thoroughly describing her "symptoms, course of treatment, and bouts of remission, and thereby chart[ing] a course of improvement." *Id*. Although the ALJ here cited to mental status findings spanning several years, his discussion of those examinations was incomplete, omitting any mention of contrary findings from the same examinations and papering over these inconsistencies by labeling the findings as "relatively unremarkable" and "benign." ER 2224-25. In my view, this selective reading of the record does not provide substantial evidence to discredit the opinions of Dr. Lewis, Dr. McDuffee, or Dr.

1

Wilkinson as to Wesselius's disability. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

Failing to account for the full extent of an applicant's symptoms over the relevant period is particularly egregious in the context of mental illness, which is inherently variable. *See Garrison*, 759 F.3d at 1017 n.23. As our case law recognizes, mental health symptoms can be expected to "wax and wane in the course of treatment," and an individual suffering from mental illness will, at times, have relatively normal mental status findings. *Id*. at 1017. In this case, the record taken as a whole reflects exactly that sort of waxing and waning, rather than any sustained improvement. While Wesselius at times reported feeling better and having her mental illness under control, her progress was not linear. She continued to experience anxiety, depression, and panic attacks, and her symptoms were sometimes so severe that she worried about being hospitalized. She reported her ongoing issues to her doctors, expressing concerns that her mental health was "going backwards." ER 2037.

The ALJ's failure to address the extensive evidence in the record indicating that Wesselius continued to struggle with her mental health throughout the relevant period indicates that he did not adequately consider the record as a whole. An ALJ need not discuss every piece of evidence, but he must explain why "significant probative evidence" has been rejected. *Vincent ex rel. Vincent v. Heckler*, 739

2

F.2d 1393, 1394-95 (9th Cir. 1984). A substantial number of treatment notes and test results produced by Wesselius's doctors during the relevant period document an individual experiencing the highs and lows of mental illness, and the ALJ could not ignore them simply because they do not fit within his characterization of the record.

We must be careful to avoid demanding consistency from conditions that do not progress in consistent ways. Wesselius's medical records paint a clear picture of a woman who persistently suffered from debilitating mental illness throughout the relevant period, despite the fact that there were some good days among the bad. Because the ALJ in this case relied on cherry-picked portions of the record to find that Wesselius's condition had improved, ignoring substantial contrary evidence, I would hold that his decision to discredit Dr. Lewis, Dr. McDuffee, and Dr. Wilkinson is not supported by substantial evidence and would remand the case for further proceedings.