**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRAVIS COLEMAN, <br> *Plaintiff-Appellant*, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br> *Defendant-Appellee*. | No. 19-35700 <br><br> D.C. No. <br> 2:18-cv-01233-MJP <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted October 9, 2020
Seattle, Washington

Filed November 2, 2020

Before: Michael Daly Hawkins, Ronald Lee Gilman,[*] and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Gilman

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

# SUMMARY[**]

## Social Security

The panel affirmed the district court's decision affirming the Commissioner of Social Security's denial of a claimant's application for disability insurance benefits under Title II of the Social Security Act.

The panel held that the administrative law judge ("ALJ") did not err in discounting the claimant's testimony based on her finding that claimant had engaged in drug-seeking behavior. The panel held that substantial evidence supported this finding. The panel further held that the medical record reflected conduct by claimant inconsistent with his subjective complaints. The panel concluded that the ALJ provided clear and convincing reasons to discount claimant's testimony.

The panel held that the ALJ did not err in weighing the medical opinion evidence because she provided legally sufficient reasons to weight the medical testimony in the manner in which she did. Specifically, the ALJ did not err in concluding that the opinions assessing severe limitations were unsupported by the record, thus furnishing a specific and legitimate reason to discount the opinions of Dr. Foster and Dr. Jackson and a germane reason to disregard the opinion of Nurse Practitioner Schwarzkopf. In addition, the ALJ did not err in disregarding or discounting the medical opinions that relied on claimant's self-reports of pain.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Finally, the panel held that the ALJ did not err in excluding pain disorder as a severe impairment at Step Two of the five-step disability determination framework set forth in 20 C.F.R. § 404.1520(a) because substantial evidence supported that determination.

## COUNSEL

Eitan Kasssel Yanich (argued), Law Office of Eitan Kassel Yanich PLLC, Olympia, Washington, for Plaintiff-Appellant.

Sarah Moum (argued), Assistant Regional Counsel; Mathew W. Pile, Acting Regional Chief Counsel; Kerry Jane Keefe, Assistant United States Attorney; Brian T. Moran, United States Attorney; Office of the General Counsel, Social Security Administration, Seattle, Washington; for Defendant-Appellee.

## OPINION

GILMAN, Circuit Judge:

Travis Coleman appeals the decision of the district court to affirm the Commissioner of Social Security's denial of his application for disability-insurance benefits under Title II of the Social Security Act.  Coleman argues that the Administrative Law Judge (ALJ) erred in discounting his subjective-symptom testimony, rejecting or discounting the medical opinions of several treatment providers, and declining to consider pain disorder as a severe impairment. The district court affirmed the ALJ's decision, finding that the ALJ gave clear and convincing reasons for discounting

Coleman's testimony and specific and legitimate reasons for discounting or rejecting the medical opinions favorable to Coleman. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Medical-record evidence

Coleman was born in 1982. He alleges the onset of disability as of November 5, 2013 due to spine, shoulder, and elbow problems. In May 2014, Coleman's treating physician, Steven Foster, D.O., diagnosed Coleman with lumbago and cervicalgia and opined that Coleman was limited to sedentary work. Two and a half months later, Dr. Foster diagnosed Coleman with lumbar stenosis and completed another opinion form that reflected severe limitations. Dr. Foster cited Coleman's complaints of pain, limited range of motion, and MRI results in support of his findings. The doctor continued to treat Coleman until April 6, 2015. On that date, Coleman terminated his relationship with Dr. Foster after the doctor declined to prescribe additional pain medication.

In November 2014, Coleman visited Christopher Benner, ARNP. Nurse Practitioner Benner noted that the X-ray images of Coleman's spine were "normal" and that Coleman exhibited the basic range of motion. The nurse practitioner also noted Coleman's complaints of severe pain and observed Coleman's pain behavior with minimal palpation. A psychological evaluation was then recommended. Accordingly, Coleman met with Leslie Schneider, Ph.D., in January 2015. Dr. Schneider diagnosed Coleman with "pain disorder associated with psychological and physical factors," but expressed uncertainty, commenting that "[t]his seems to be a rather unusual case,

with a lot of factors here where I do not think that I have a really good grasp on." The psychologist also noted that Coleman "may very well qualify for Disability. This is quite a strange and unusual case that just does not fit into any neat category."

Coleman began treatment with Michael Chang, M.D., in early 2015. Dr. Chang diagnosed Coleman with spinal stenosis in the cervical region and recommended surgery. In May 2015, Dr. Chang performed an anterior C5-C6 discectomy. Coleman was evaluated six days later by Nancy Schwarzkopf, ARNP. Nurse Practitioner Schwarzkopf opined that Coleman's functional capacity was severely limited, that he could not meet the demands of sedentary work, and that this limitation would persist for at least 12 months. In September 2015, Joanna Kass, ARNP, also opined that Coleman was severely limited. The following month, Charles Linsenmeyer, M.D., reviewed the medical record current at that time and concluded that Coleman's impairments medically equaled Listing 1.04A ("Disorders of the spine").

By early 2016, other treating and reviewing physicians began to reach different conclusions. In January 2016, Coleman met with Dave Atteberry, M.D. Dr. Atteberry reviewed the MRI scans of Coleman's lumbar spine and found nothing requiring intervention. Examination showed normal motor strength, tone, and gait. Zornitza Stoilova, M.D., examined Coleman in March 2016 and noted similar findings. Dr. Stoilova observed that Coleman's repeat cervical and lumbar spine MRIs did not show any abnormalities that would explain his pain. Coleman's reports of pain, however, persisted. And in March 2016, Caryn Jackson, M.D.—who had treated Coleman since October 2015—assessed severe limitations.

The medical evidence also includes treatment notes from several emergency room visits. Between the end of May and early June 2015, the record shows that Coleman visited the emergency room on three separate occasions with reports of severe neck pain. When he arrived at the ER on June 5, the ER doctor declined his request for pain medication, noting that an Emergency Department Information Exchange alert showed multiple prescriptions for pain medication being filled by multiple providers, with approximately 380 pills in the last 30 days and 800 pills in the last five months. When Coleman returned the next day with reports of even more severe pain, he was again denied pain medication.

During the administrative hearings, held on September 30, 2015 and April 20, 2016, Coleman testified to the severity, persistence, and limiting effects of his pain. He testified that he could not return to his work as a desktop-support technician because "all [he] could think about was how much pain [he was] in." Coleman further testified that he has the same levels of pain that he experienced before surgery and that he is unable to sit down for more than a short period of time.

Allan Levine, M.D., also testified during the April 20, 2016 hearing. Dr. Levine had reviewed the medical record and testified that the various imaging studies and physical examinations showed no evidence of nerve root or spinal-cord compromise, findings required for an impairment to meet Listing 1.04A. He nonetheless opined that Coleman retained less than sedentary functional ability during the year following his May 2015 neck surgery, an opinion that was inconsistent with Dr. Atteberry's January 2016 examination of Coleman. In addition, Dr. Levine opined that Coleman would be much less limited after May 2016 and could, for example, sit for six out of eight hours in a day.

**B.  The ALJ's decision**

In June 2016, the ALJ issued her decision denying Coleman's application.  The ALJ applied the five-step disability-determination framework set forth in 20 C.F.R. § 404.1520(a).  At Step One, the ALJ found that Coleman had not engaged in substantial gainful activity since his alleged disability onset date of November 5, 2013.  The ALJ found at Step Two that Coleman had the following severe impairments: degenerative disc disease of the lumbar spine and the status of post-cervical fusion at C5-C6.  At Step Three, the ALJ concluded that these impairments "did not meet[ ] or medically equal[ ] a listed impairment."

Before reaching Step Four, the ALJ determined Coleman's residual functional capacity (RFC).  The ALJ found that from November 2013 through May 2016, Coleman had the RFC to perform sedentary work.  She further found that since May 2016, Coleman had the RFC to perform light work with several limitations.  At Step Four, the ALJ found that, based on Coleman's RFC and the testimony of the vocational expert, Coleman was able to perform his past relevant work as a desktop-support technician.  The ALJ then made an alternative Step Five finding that Coleman could perform other work existing in significant numbers in the national economy.  In June 2019, the district court affirmed.

## II.  ANALYSIS

**A.  Standard of review**

We review a district court's decision in a Social Security case de novo and will reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."

*Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## B. The ALJ did not err in discounting Coleman's testimony

During the administrative hearings, Coleman testified to the persistence and limiting effects of his pain. Such testimony is inherently subjective and difficult to measure. For these reasons, this court has observed that the ALJ's credibility assessment regarding a claimant's pain testimony is especially important. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) (noting that "[t]he ALJ's assessment of the claimant's credibility [is] exceptionally important in excess pain cases," which "often hinge entirely on whether or not the claimant's description of what he is feeling is believed"). An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Instead, the ALJ must provide clear and convincing reasons when finding a claimant's pain testimony not credible. *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014).

In this case, the ALJ discounted Coleman's testimony because she found that Coleman had engaged in drug-seeking behavior. Substantial evidence supports that finding. Coleman, for example, left Dr. Foster after the doctor was unwilling to continue prescribing pain medication. And when Coleman sought to receive pain medication through the emergency room, the ER staff repeatedly refused, noting that an information alert showed

excessive pain medication being filled by multiple providers statewide.

The medical record also reflects conduct by Coleman inconsistent with his subjective complaints. During one visit to the ER, for example, a nurse observed that Coleman, after complaining of neck pain, was able to fully rotate his neck without any evidence of pain. Another nurse observed that Coleman, during a subsequent ER visit, was moving his right wrist and fingers after stating that he was unable to do so. Because there is substantial evidence of drug-seeking behavior despite these observations of Coleman's pain-free behavior, the ALJ provided a clear and convincing reason to discount Coleman's testimony.

Coleman responds that the evidence of drug-seeking behavior underscores the severity of his pain. But the evidence of drug-seeking behavior is also paired with indications that his complaints of pain were exaggerated. Moreover, even if Coleman's explanation is a rational one, we will not disturb the ALJ's differing rational interpretation where the ALJ's interpretation is adequately supported. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## C. The ALJ did not err in weighing the medical-opinion evidence

Coleman next challenges the weight given to the opinions of two of his treating physicians, a treating psychologist, a nonexamining physician, and two nurse practitioners. Generally, the weight afforded to a medical opinion depends upon the source of that opinion. A treating physician's opinion, for example, is entitled to greater

weight than the opinions of nontreating physicians. *Garrison*, 759 F.3d at 1012. To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). The ALJ must instead provide specific and legitimate reasons for doing so that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216.

In this case, the opinions of Dr. Foster and Dr. Jackson were contradicted by the observations of two other treating physicians (Dr. Atteberry and Dr. Stoilova) who found little indication of serious physical impairment. We must therefore consider whether the ALJ provided specific and legitimate reasons for discounting the medical opinions of Dr. Foster and Dr. Jackson. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) ("Given that numerous other physicians who had examined Edlund over the years found little objective indication of serious physical impairment, thus contradicting Dr. Christiansen's diagnosis, the ALJ was only required to provide specific and legitimate reasons for rejecting his opinion.").

Coleman also objects to the weight that the ALJ assigned to the opinions of Nurse Practitioners Kass and Schwarzkopf. When reviewing claims filed during the time in question, "a nurse practitioner [was] not an acceptable medical source," but was instead defined as an "other source[ ]" entitled to less deference. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (internal quotation marks omitted). "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each

witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted).

Here, the ALJ provided legally sufficient reasons to weigh the medical testimony in the manner in which she did. Coleman's full medical record casts doubt on the severity of the limitations assessed by these sources. Two of these sources (Dr. Jackson and Nurse Practitioner Schwarzkopf) relied entirely on Coleman's limited range of motion when assessing severe limitations. Dr. Foster also cited this finding as a basis for his opinion. The ALJ noted, however, that Coleman frequently presented with a normal range of motion in the neck and spine.

Dr. Foster also based his opinion on the MRI scans. But the imaging of Coleman's cervical spine from October 2013, June 2014, and July 2014 showed, at most, mild to minimal stenosis. A different treating physician, Dr. Atteberry, later reported that these images showed adequate decompression with no significant stenosis and Nurse Practitioner Benner described Coleman's cervical X-ray to be an "overall unremarkable study."

In sum, the ALJ did not err in concluding that the opinions assessing severe limitations were unsupported by the record, thus furnishing a specific and legitimate reason to discount the opinions of Dr. Foster and Dr. Jackson and a germane reason to disregard the opinion of Nurse Practitioner Schwarzkopf. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.") (internal citation omitted).

The ALJ also noted that several of these sources relied on Coleman's self-reports of pain, including Dr. Schneider, Dr. Foster, and Nurse Practitioner Kass. As discussed above, substantial evidence supports the ALJ's conclusion that Coleman's drug-seeking behavior renders his self-reports of pain less persuasive. The ALJ therefore did not err in disregarding or discounting the medical opinions that relied on Coleman's self-reports of pain. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (internal quotation marks omitted); *see also Edlund*, 253 F.3d at 1157 (holding that the ALJ provided a specific and legitimate reason for discounting the treating physician's opinion when "the ALJ cited the likelihood that[,] unbeknownst to Dr. Christiansen, Edlund was exaggerating his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction").

## D. The ALJ did not err in excluding pain disorder as a severe impairment

Finally, Coleman contends that the ALJ erred in failing to include pain disorder as a severe impairment. At Step Two, the ALJ recognized that Dr. Schneider diagnosed pain disorder associated with psychological and physical factors. The ALJ nonetheless concluded that this was not a severe impairment. Substantial evidence supports this determination. Dr. Schneider's diagnosis was based on Coleman's self-reports of pain, which, as noted above, are less persuasive considering Coleman's drug-seeking behavior. In addition, objective medical evidence does not support the degree of pain and physical limitations that Coleman alleged. Dr. Stoilova, for example, observed that

the imaging of Coleman's neck and spine could not explain Coleman's pain.  Coleman's X-rays were also interpreted as unremarkable, and the nerve-conduction studies were within normal limits.  Finally, Dr. Schneider—the only acceptable medical source to diagnose Coleman with pain disorder— admitted to not "hav[ing] a really good grasp" on Coleman's condition.  The ALJ, in sum, did not err in failing to include pain disorder as a severe impairment at Step Two.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.