FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BRIAN GLANDEN,

*Plaintiff-Appellant*,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

*Defendant-Appellee*.

No. 22-35632

D.C. No. 2:21-cv-
00292-TOR

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted July 14, 2023
Seattle, Washington

Filed November 16, 2023

Before: Susan P. Graber, Ronald M. Gould, and Richard
A. Paez, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Graber

# SUMMARY[*]

## Social Security

The panel reversed the district court's judgment affirming an administrative law judge's denial of plaintiff's application for social security disability insurance benefits at step two of the sequential analysis.

The panel explained that at step two of the sequential analysis, claimants need only make a de minimis showing for the ALJ's analysis to proceed past this step and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations. The seven-month period for which plaintiff seeks disability benefits falls within a two-and-a-half-year gap in his medical treatment records.

The panel held that plaintiff made the requisite showing to meet step two's low bar where he submitted evidence that he suffered from multiple chronic medical conditions that both preceded and succeeded the gap in his treatment. Plaintiff explained the gap in treatment was due to his inability to pay. In addition, an agency medical expert testified that he would expect that plaintiff experienced symptoms serious enough to require treatment during the relevant period. The panel concluded that this cumulative evidence was enough to establish that plaintiff's claim was nonfrivolous and to require the ALJ to proceed to step

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

three. Therefore, the ALJ's denial of plaintiff's claim at step two was premature.

The panel also held that the ALJ did not provide clear and convincing reasons for rejecting plaintiff's symptom testimony.

The panel reversed the district court's judgment with instructions to remand the case to the agency for further proceedings.

Dissenting, Judge Graber would hold that substantial evidence supported the ALJ's conclusion that the plaintiff failed to meet his burden at step two of showing that he had a "severe" impairment during the seven-month period when he presented no medical evidence.

---

**COUNSEL**

Chad Hatfield, Hatfield Law PLLC, Kennewick, Washington, for Plaintiff-Appellant.

Shata L. Stucky, Attorney, Office of the General Counsel; Mathew W. Pile, Associate General Counsel; Office of Program Litigation, Social Security Administration, Baltimore, Maryland; Timothy M. Durkin, Assistant United States Attorney; Vanessa R. Waldref, United States Attorney; United States Attorney's Office, Seattle, Washington; Brian M. Donovan, Assistant United States Attorney, United States Attorney's Office, Spokane, Washington; for Defendant-Appellee.

## OPINION

PAEZ, Circuit Judge:

Brian Glanden ("Glanden") appeals the district court's judgment affirming an administrative law judge's ("ALJ's") denial of his application for social security disability insurance benefits at step two of the sequential analysis. We reverse and remand for further proceedings.

## I.

Brian Glanden has lived with a combination of chronic medical conditions for more than a decade. He first had spine surgery in 2010 to address herniated lumbar discs. At examinations in 2011, he continued to exhibit abnormal reflexes, musculature, flexion, and tenderness of his back. Physicians diagnosed him with lumbar degenerative disc disease and lumbar radiculopathy.

Glanden worked as a framer and laborer in 2012. In spring 2013, he again sought treatment for spinal issues, and new imaging of his spine confirmed ongoing problems. Around the same time, he sought treatment for pain in his right wrist, lower back, and leg. Imaging showed that his wrist problems stemmed from necrosis of the bone tissue and a cyst in his scaphoid bone, a small bone in the wrist joint. In April 2013, because of this condition, Glanden's physician restricted him to light work that did not require lifting with his right hand and recommended that he receive assistance with writing. Glanden underwent wrist surgery that same month for a bone graft and screw fixation.

Glanden was incarcerated for part of March 2013, from approximately June 2013 to August 2013, and from approximately August 2014 until the end of 2017.[1]

In August 2013, while out of prison, Glanden went to an emergency room seeking medication for wrist pain. The provider described Glanden's behavior as aggressive and drug-seeking. Glanden again sought treatment for wrist pain at the emergency room in February 2014. The doctor noted Glanden's chronic wrist pain and again suspected drug-seeking behavior.

Glanden continued to report wrist pain while incarcerated, as reflected in records from January 2015. In December 2015, he was hospitalized with a severe head injury. He testified that after that incident, he began experiencing chronic headaches. In July 2016, prison medical providers noted that although Glanden needed a second wrist surgery to repair a fracture with a bone graft, they were unable to schedule the procedure because he was a cigarette smoker.

Glanden was released from prison in 2017. His attempt to work in January 2018 was unsuccessful because his back pain and headaches prevented him from walking, standing, or sitting for long periods. Glanden's employer initially tried to accommodate these restrictions. He allowed Glanden to take extended lunch breaks, lie down in the afternoons, and occasionally leave work early. These changes did not relieve Glanden's issues, however, and the employer terminated him due to the lengthy breaks that he required.

---

[1] The precise dates of Glanden's incarceration are unclear from the record.

Because Glanden had no income during his years in prison and was unable to sustain work after his release, he lacked health insurance and could not afford medical treatment. A two-and-a-half-year gap in his medical records corresponds with the period when he was uninsured. The seven-month period for which he seeks disability benefits, December 2017 to June 2018, falls in the middle of that period.

Glanden testified that during this time, he experienced daily headaches and back pain along with other persistent symptoms such as balance issues. On some days, he could perform activities such as yard work, but on other days when his symptoms were more severe, he avoided all activity and social interaction. His headaches and back pain required him to isolate himself and lie down for one to three hours at unpredictable times. He sometimes needed to lie down all day. His back pain also caused him to have difficulty bending over and moving objects. He further testified that his range of motion and flexion in his wrist remained limited throughout that period, preventing him from driving a hammer or writing notes.

Glanden obtained health insurance in early 2019. He resumed treatment for his chronic back condition and migraine headaches about five months later.[2] At his June 2019 appointment and two follow-up appointments, he described how, while he was attempting yardwork in late May 2019, a "pop" in his back had caused an acute flare-up in pain which previously had been at a stable level. A car accident in July 2019 further exacerbated his pain. In

---

[2] Glanden testified that after he received approval for Washington state medical insurance, it took him several months to obtain an appointment with a covered physician.

September 2019, he had a second spinal surgery to address a protruded disc. Providers suspected that he was noncompliant with post-operative orders, possibly causing further herniation, and noted that he missed follow-up appointments.

Glanden first applied for disability insurance benefits on September 3, 2019, alleging a disability onset date of December 1, 2017. His date last insured for the purpose of benefits eligibility was June 30, 2018. The Social Security Administration ("SSA") denied his application initially and on reconsideration, and he requested an administrative hearing. After the December 14, 2020 hearing, the ALJ determined that Glanden was not disabled.

The ALJ followed the five-step evaluation process to assess Glanden's disability claim. *See* 20 C.F.R. § 404.1520. At step one, he found that Glanden had not engaged in substantial gainful activity since his application date. At step two, he found that Glanden had five medically determinable impairments: lumbar degenerative disc disease status post-surgery, a right wrist injury, headaches, hypertension, and mild depression. After considering Glanden's symptom testimony; the medical evidence, which included testimony from a consulting agency physician; and lay witness statements,[3] the ALJ found that the evidence established that Glanden had did not have a severe impairment or combination of impairments during the relevant period. As a result, the ALJ determined that Glanden was not disabled during the relevant period and

---

[3] Glanden has waived on appeal the issue of whether the ALJ erred in rejecting lay witness testimony because he did not raise it at the district court. *See, e.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

denied his claim without considering the remaining steps. *See* 20 C.F.R. § 404.1520(a)(4).

The Social Security Appeals Council denied Glanden's request for review. Glanden then sought review in the district court, and the district court granted the Commissioner's motion for summary judgment. This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's order affirming the ALJ's denial of social security benefits and reverse only if the decision was not supported by substantial evidence or is based on legal error. *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks omitted). A reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim*, 763 F.3d at 1160 (internal quotation marks and citations omitted).

## III.

The ALJ denied Glanden's claim at step two of the five-step sequential analysis. Step two inquires whether the claimant had severe impairments during the period for which he seeks disability benefits. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" an individual's "ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The Supreme Court considered the validity of step two in *Bowen v. Yuckert*, 482 U.S. 137 (1987), and concluded that the regulation is facially consistent with the Social Security Act.  The Court described the step-two severity analysis as a "threshold showing," *Bowen*, 482 U.S. at 147, that serves to "identify[] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account," *id.* at 153.

Writing separately, Justice O'Connor agreed that the step-two regulation could be applied consistently with the Act but expressed concern about its frequent misuse to deny claims prematurely.  *Bowen*, 482 U.S. at 156–57.  She endorsed the agency's narrow interpretation of the regulation in its Social Security Ruling (SSR) 85-28,[4] which construes step two as a de minimis requirement that screens out only frivolous claims.

On remand from the Supreme Court's decision in *Yuckert*, we adopted the interpretation in SSR 85-28. *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988).  Our narrow application of the rule places us in good company: nine other circuits have also announced that they view step two as requiring no more than a de minimis showing.  *See McDonald v. Sec'y of Health & Hum. Servs.,* 884 F.2d 1468, 1476–77 (1st Cir. 1989); *Dixon v. Shalala*, 54 F.3d 1019, 1030–31 (2d Cir. 1995); *Bailey v. Sullivan,* 885 F.2d 52, 56–

---

[4] SSRs "do not carry the force of law, but they are binding on ALJs nonetheless." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017). "They reflect the official interpretation of [the SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations."  *Id.*

57 (3d Cir. 1989); *Anthony v. Sullivan,* 954 F.2d 289, 294–95 (5th Cir. 1992); *Higgs v. Bowen,* 880 F.2d 860, 862–63 (6th Cir. 1988); *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990) (en banc); *Hudson v. Bowen,* 870 F.2d 1392, 1395–96 (8th Cir. 1989); *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); *Stratton v. Bowen,* 827 F.2d 1447, 1453 (11th Cir. 1987).

Each time we have reviewed an ALJ's step-two analysis, we have reiterated the corollary principles that claimants need only make a de minimis showing for the analysis to proceed past this step and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations. Because it is relatively rare for an ALJ to deny a claim at step two,[5] our caselaw contains few examples of cases where the analysis ended at this step. We have published only three such opinions: two remanding the case to the agency, *see Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005), and one affirming the ALJ's denial of benefits, *see Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).

Other cases have presented step-two questions although the ALJ denied the claim at another point in the sequential analysis. *See, e.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (discussing errors in the ALJ's step-two analysis although the ALJ proceeded to deny the claim at step five); *Corrao v. Shalala*, 20 F.3d 943, 949–50 (9th Cir. 1994), *as modified on reh'g* (Apr. 7, 1994) (reversing and

---

[5] *See* Bernard Wixon & Alexander Strand, *Identifying SSA's Sequential Disability Determination Steps Using Administrative Data*, Soc. Sec. Admin. (June 2013), http://www.ssa.gov/policy/docs/rsnotes/rsn2013-01.html [https://perma.cc/G2G9-F3B4].

remanding a step-one denial of benefits where the ALJ had analyzed step two in the alternative).

Our approach to reviewing an ALJ's denial of a claim at this preliminary stage remains constant and firmly in step with our sister circuits: once a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments "not severe" at step two "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (quoting *Smolen,* 80 F.3d at 1290); *accord* SSR 85-28 (explaining that ALJs must apply step two using "great care" by proceeding to step three if a clear determination cannot be made).

## IV.

### A.

If a claimant has submitted evidence of a severe impairment, we analyze an ALJ's step-two denial by asking "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687. An inconclusive medical record precludes denial at this step. If an ALJ "is unable to determine clearly the effect of an impairment . . . on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. Rather, it should be continued." SSR 85-28.

The seven-month period for which Glanden seeks disability benefits falls within a two-and-a-half-year gap in his medical treatment records. If "the medical record paints an incomplete picture of [the claimant's] overall health

during the relevant period," there can nonetheless be "evidence of problems sufficient to pass the de minimis threshold of step two." *Webb*, 433 F.3d at 687.

Glanden made the requisite showing to meet step two's low bar. He submitted evidence that he suffers from multiple chronic medical conditions that both preceded and succeeded the gap in his treatment. He explained that the gap in treatment was due to his inability to pay. In addition, an agency medical expert testified that based on Glanden's records, he would expect that Glanden experienced symptoms serious enough to require treatment during the relevant period. This cumulative evidence is enough to establish that Glanden's claim is nonfrivolous and to require the ALJ to proceed to step three.

Our relevant caselaw, though limited, supports our conclusion that Glanden has met his step-two burden. Although Glanden's treatment gap is longer, his situation resembles that of the claimant in *Webb*, and our decision in that case is instructive here. We held that Webb's other evidence overcame gaps in treatment that the ALJ had found to undermine his reported symptoms. *Webb*, 433 F.3d at 687. Glanden's inability to afford treatment is as reasonable an explanation as the "vicissitudes" in Webb's condition. *Id.*

The ALJ's erroneous step-two denial stemmed from his rejection of Glanden's explanation for his treatment gap based on a misreading of the record.

The ALJ rejected Glanden's explanation because he found that Glanden had access to free clinics but chose not to use them, undermining his allegations of severe symptoms. Substantial evidence does not support this finding. Glanden testified that the free clinics offered only acute care such as flu shots and would not treat his

conditions. The ALJ's characterization of Glanden as overly selective about his preferred form of care is contrary to the record, which shows that Glanden described a lack of access to appropriate care.

This misinterpretation pervaded the rest of the ALJ's analysis. He reasoned that "if [Glanden's] symptoms were not significant enough for him to seek treatment to which he had free access, they likely were not disabling." In addition to testifying that no free treatment was available, however, Glanden explained that to manage his pain in the absence of treatment, he extensively modified his activities of daily living to cope with his symptoms. He described laying down for hours at a time every day, avoiding people, and staying home and doing very little, with some days involving more restrictions than others. The ALJ ignored these coping mechanisms in his finding that a lack of treatment was inconsistent with the symptoms that Glanden alleged. *Cf.* SSR 16-3p (requiring consideration of symptom management methods other than professional care). These measures explain Glanden's ability to manage his daily living without medical care that he could not afford while avoiding visits to the emergency room.

The court in *Webb* remanded for further analysis because substantial evidence did not support the ALJ's finding that Webb's "claim was 'groundless.'" 433 F.3d at 688 (citing *Smolen*, 80 F.3d at 1290); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) (remanding case because the ALJ failed to abide by the "'de minimis' standard" at step two). Because we interpret step two as screening out only groundless claims, the record in this case counsels the same result.

In *Ukolov*, we affirmed the ALJ's step-two denial because "even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate." *Webb*, 433 F.3d at 688 (citing *Ukolov*, 420 F.3d at 1006). Indeed, the *Ukolov* claimant failed to show that he had any diagnosed impairments, and his physicians were unable to verify his alleged symptoms through any medical examinations or test results. 420 F.3d at 1005. Step two is intended to screen for precisely this sort of frivolous claim. Glanden's extensive medical history and explanation for his gap in treatment distinguish his case as one in which substantial evidence does not support the finding that the record clearly establishes the absence of severe impairments.

## B.

Dr. Smiley, a state agency medical expert, reviewed Glanden's records and testified at the hearing. Without contemporaneous medical records, Dr. Smiley could not opine on Glanden's specific limitations during the relevant period. He testified, however, that based on the existing records, he would expect Glanden to have had serious symptoms that required treatment during the relevant period. He repeatedly expressed disbelief that he had received the complete record, explaining that the gap in treatment did not correspond with the serious conditions established by the medical records before and after the gap. There is no indication that Dr. Smiley was aware of Glanden's inability to afford treatment during the period when he lacked insurance.

The ALJ found Dr. Smiley's opinion to be "generally persuasive" while noting that the doctor "was unable to give an opinion about the claimant's functional limitations during

the relevant period because of lack of evidence." The ALJ found that Dr. Smiley's inability to identify limitations with certainty was "not inconsistent" with the ALJ's "finding that there was no severe impairment during the relevant period."

The ALJ's erroneous determination that Glanden had access to free treatment distorted his view of Dr. Smiley's testimony. Because the ALJ rejected Glanden's explanation for his lack of treatment, he interpreted the expert testimony as confirmation that Glanden had no symptoms during the relevant period that could result in significant limitations.

We consider the evidence in view of the record as a whole. *Ghanim*, 763 F.3d at 1160. In the context of Glanden's testimony explaining the treatment gap, Dr. Smiley's testimony does not support the ALJ's finding that the medical record clearly establishes that Glanden had no severe impairments. The doctor's opinion that, based on Glanden's medical history, one would expect him to have required treatment during the relevant period undermines the conclusion that the record unambiguously established no more than minimal limitations. *See Webb*, 433 F.3d at 686.

The ALJ's finding that Glanden had access to free treatment during the relevant period skewed his view of the record and the expert medical testimony. In the context of Glanden's inability to access care without insurance, the record of Glanden's serious chronic conditions meets the low bar of step two, and the ALJ erred in denying his claim without further analysis.

## C.

On the record that does exist, the ALJ did not provide clear and convincing reasons for rejecting Glanden's symptom testimony. *Cf. Smolen*, 80 F.3d at 1284 (stating

that rejecting or discounting a claimant's symptom testimony requires "specific findings stating clear and convincing reasons") (citation omitted)).  While the ALJ must consider the level of consistency between symptom testimony and the medical evidence, not all inconsistencies are "sufficient to doom [a] claim as groundless under the de minimis standard of step two." *Webb*, 433 F.3d at 688. Indeed, "[t]he clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ first interpreted the lack of medical treatment as undermining Glanden's symptom allegations based on his finding that Glanden had access to free treatment that he did not utilize.  As discussed above, the record evidence shows that the free clinics that Glanden referenced in his testimony were not equipped to treat his conditions, and substantial evidence therefore does not support this finding. "Where a claimant provides evidence of a good reason for not taking medication for her symptoms," such as inability to afford treatment, "her symptom testimony cannot be rejected for not doing so." *Smolen*, 80 F.3d at 1284.

In addition to the gap in medical treatment, the ALJ determined that aspects of the existing record evidence conflicted with Glanden's alleged symptoms.  None of these potential inconsistencies rises to the level of clear and convincing reasons to reject his testimony.

The ALJ interpreted various notes in Glanden's medical records from before and after the relevant period as undermining his testimony.  First, the ALJ pointed to medical providers' notes that Glanden described an acute

flare-up of his back pain at the end of May 2019 while attempting yard work. Glanden's increased pain after exerting himself during yardwork, however, does not conflict with his reports of pain symptoms over a year earlier during the relevant period. The ALJ perceived an inconsistency where none exists.

In addition, the ALJ discussed instances where results of exams or imaging did not fully substantiate Glanden's pain reports. But, as we have recognized, subjective pain is not always verifiable through a physical examination. *See, e.g.*, *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged." (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))); SSR 16-3p ("[W]e will not disregard" symptom reports "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Subsequent examinations confirmed deeper issues than the initial inconsistent results had revealed. The longitudinal record tends to vindicate Glanden's pain allegations.

The ALJ next focused on emergency room providers' notations that Glanden displayed drug-seeking behavior during two visits in 2013 and 2014. We considered evidence of drug-seeking behavior to be a clear and convincing reason to discount symptom testimony in *Coleman*, 979 F.3d at 756. That case, however, was a step-four denial that involved accompanying indications that the claimant exaggerated his pain. *Id.* For example, although Coleman stated that he could not move his wrist or fingers or rotate his neck without pain, doctors observed him perform these actions with no sign of pain. *Id.*

Glanden's two visits to the emergency room demanding medication for wrist pain in 2013 and 2014 involved no such indications that he was misrepresenting his symptoms. Indeed, subsequent medical examinations substantiated his claims, and his persistent wrist issues ultimately required a second bone graft surgery. Given that the medical records as a whole are consistent with his symptom reports, providers' suspicions of drug-seeking behavior years before the relevant period do not amount to clear and convincing reasons to reject Glanden's testimony at this preliminary stage. *See Webb*, 433 F.3d at 688.

The ALJ also pointed to a provider's note from 2019 stating that Glanden failed to attend follow-up appointments after his second spinal surgery and might not have complied with post-operative instructions. Glanden's suspected noncompliance with postoperative instructions after his second spinal surgery in 2019 is not a clear and convincing reason to reject his allegations regarding the symptoms that he experienced during December 2017 to June 2018.

Finally, the ALJ discussed the opinions of agency medical consultants and the testimony of medical expert Dr. Smiley, all of whom were unable to opine with certainty about Glanden's limitations during the relevant period because of the gap in the medical evidence. This basis for rejection is redundant with the lack of treatment during the relevant period, and it likewise fails to be clear and convincing because the ALJ improperly dismissed Glanden's explanation for the gap in his treatment.

In the absence of clear and convincing reasons to reject Glanden's symptom testimony, this subjective evidence bolstered Glanden's showing that his claim overcame the

low hurdle of screening for groundless claims.  *See Smolen*, 80 F.3d at 1284–85.

Because the record did not clearly establish a slight impairment with no more than a minimal effect on Glanden's ability to work, the ALJ should not have denied the claim at step two.  *See, e.g.*, *Webb*, 433 F.3d at 686 (explaining that an ALJ may deny a claim at step two "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work" (quoting *Smolen,* 80 F.3d at 1290)).    Glanden presented sufficient evidence to overcome the low bar of showing that his claim was not groundless.

We express no view as to whether Glanden will succeed in proving that he is entitled to benefits; we hold only that denial at step two was premature.  We reverse the judgment of the district court with instructions to remand the case to the agency for further proceedings consistent with this disposition.

**REVERSED and REMANDED.**

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent.  Substantial evidence supports the administrative law judge's ("ALJ") conclusion that Claimant failed to meet his burden, at step two, of showing that he had a "severe" impairment during the seven-month period from December 2017 to June 2018.  Step two is a "de minimis" screening step, Smolen v. Chater, 80 F.3d 1273,

1290 (9th Cir. 1996), but this case is the unusual one in which the claimant fails to meet even that low bar.[1]

Claimant presented no medical evidence prepared during, or directly related to, the period from January 2017 to June 2019—a two-and-a-half-year period encompassing the relevant seven months plus nearly a year before and a year after. Claimant relies instead on his own testimony describing back pain and other symptoms during that time. The ALJ concluded that Claimant had medically determinable impairments, including "lumbar degenerative disc disease, status post surgery" and "a right wrist injury," that could cause symptoms. But the ALJ concluded that Claimant's testimony about the intensity, persistence, and limiting effects of the symptoms was not credible. The ALJ permissibly concluded that Claimant failed to prove that any of his ailments affected his ability to work during the relevant seven-month period.

The ALJ found Claimant's testimony not credible because it conflicted with "the objective medical evidence, the claimant's course of treatment (or lack thereof), the claimant's pattern of past contemporaneous recorded statements to medical providers, the claimant's non-compliance with treatment and drug-seeking behavior, and the absence of supportive medical opinions." Substantial evidence supports each of those clear and convincing reasons. See, e.g., Rounds v. Comm'r Soc. Sec. Admin., 807

---

[1] Notwithstanding the majority opinion's emphasis on the rarity of step-two denials, op. at 9–11, recently we have affirmed step-two denials in several unpublished cases, e.g., Cyree v. Kijakazi, No. 22-35462, 2023 WL 3862512 (9th Cir. June 7, 2023) (unpublished); Nelson v. Kijakazi, No. 22-35273, 2023 WL 2182362 (9th Cir. Feb 23, 2023) (unpublished); English v. Saul, 840 F. App'x 241 (9th Cir. 2021); Collie v. Saul, 837 F. App'x 497 (9th Cir. 2021).

F.3d 996, 1002, 1006 (9th Cir. 2015) (holding that an ALJ must provide "clear and convincing reasons" for rejecting a claimant's pain testimony (citation omitted)).

Claimant's testimony conflicted with the objective medical evidence. As the ALJ described, "there is no documentation of any objective pathology or even subjective complaints of symptoms during or anywhere near the relevant period." Claimant did not seek any treatment for two-and-a-half years, spanning the relevant period. We have clearly held that a lack of supporting medical evidence plus a lack of treatment constitute clear and convincing reasons to reject a claimant's testimony. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Additionally, the record contains several instances of Claimant's drug-seeking behavior and non-compliance with treatment. We have held that those factors, too, can be clear and convincing reasons to doubt a claimant's testimony. Coleman v. Saul, 979 F.3d 751, 756 (9th Cir. 2020); Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017).

Neither Claimant nor the majority opinion disputes those fundamental facts. In rejecting the significance of those clear and convincing reasons, the majority opinion errs in two important respects.

First, as noted, we have held that drug-seeking behavior is a clear and convincing reason for rejecting the credibility of a claimant. Coleman, 979 F.3d at 756. The majority opinion distinguishes Coleman for the illogical reason that Coleman was a case involving "a step-four denial," rather than a step-two denial. Op. at 17. An assessment of the credibility of a claimant's testimony is wholly independent of the particular step in the analysis, and the majority opinion cites no authority to support its illogical distinction.

The majority opinion also notes that Coleman involved "accompanying indications that the claimant exaggerated his pain." Op. at 17. But our holding in Coleman did not hinge on that accompaniment. We clearly held that drug-seeking behavior is, by itself, a clear and convincing reason, and we then analyzed the separate inconsistency of exaggeration of pain. 979 F.3d at 756. Nothing in our caselaw suggests that drug-seeking behavior must be disregarded unless accompanied by exaggeration of pain. Moreover, even if that were required, this record contains examples of Claimant's lying to doctors about his medical needs. For example, in 2014, Claimant visited the emergency room and gave three different explanations to the doctor, twice changing his story when he did not receive the medications that he sought, and he lied about the timing of his earlier wrist surgery to imply that he needed post-surgery medication. As in Coleman, Claimant here both engaged in drug-seeking behavior and lied to medical providers, supporting the ALJ's conclusion that Claimant again lied during his merits hearing in order to seek a benefit.

Second, and most critically, the majority opinion incorrectly assesses Claimant's lack of treatment from 2017 to mid-2019. As an initial matter, this case is unlike any other case cited in the majority opinion. The majority opinion does not cite, and I have not found, a single case involving a complete lack of medical records during the relevant period (plus about a year on either side). Instead, the majority opinion holds that Claimant's lack of treatment records "resembles that of the claimant in Webb." Op. at 11 (citing Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005)). Respectfully, this case bears no resemblance to Webb. In Webb, the relevant period spanned 1991 to 1997. 433 F.3d at 685. During that period, the claimant had an X-ray with

an accompanying doctor's report in 1994; a clinical report in 1995; and several doctors' reports from 1996. Id. In rejecting the ALJ's step-two determination, we expressly relied on "Webb's doctors' contemporaneous observations [and] some objective tests." Id. at 687 (emphasis added). Here, no such contemporaneous (or even closely contemporaneous) doctors' reports or test results exist.

Moreover, the medical evidence that does exist strongly supports the ALJ's conclusion that Claimant failed to seek treatment during the relevant time period for the straightforward reason that he lacked significant symptoms. Claimant experienced problems with his right wrist, including corrective surgeries, with supporting treatment records through January 2017. But after he started seeing doctors again in 2019, he never once mentioned any wrist problems. The ALJ permissibly concluded that his corrective surgeries appear to have succeeded.

Similarly, Claimant had experienced back pain for several years, but the treatment records stopped before 2017. When he once again sought treatment for his back in June 2019, he did so after experiencing a new injury, resulting from a "popping" sound while he did some yard work. He reported to the treating physician's assistant that, before the yard-work injury, his back had been "stab[le] until this acute flair." His back had gotten worse in the preceding two months only. The next month, July 2019, he suffered yet another new back injury resulting from a car crash. In other words, Claimant sought treatment for his back in the years before 2017, and he then sought treatment again in mid-2019, only after he suffered two new injuries. The ALJ permissibly concluded that Claimant declined to seek medical treatment for the intervening two-plus years

because, as he reported in 2019, his back had been stable. He experienced no symptoms requiring treatment.

Dr. Robert H. Smiley's testimony regarding Claimant's capabilities also supports the ALJ's conclusion. Dr. Smiley testified that, without treatment records during that period, he could not "make an informed opinion about that period." But after reading the 2019 medical report that described Claimant's pre-yard-work-injury condition as "stable," Dr. Smiley concluded that, "if that's correct then during the relevant period he wasn't all that symptomatic." Claimant has not challenged the accuracy of the 2019 medical report.

Claimant testified that he had declined to seek treatment for more than two years solely because he lacked health insurance for a while. Although Claimant lacked health insurance for part of the period, he acknowledged that he could have gone to free clinics or to the emergency room as he had done in the past. Moreover, Claimant received health insurance in January 2019 and still declined to seek medical care for five months, seeking care only after he suffered a new injury. The ALJ expressly and cogently explained why Claimant's testimony about declining to seek treatment was unpersuasive:

> This 2 ½-year gap in documentation covers the entire relevant period and approximately one year on each side of the relevant period. Thus, there is no documentation of any objective pathology or even subjective complaints of symptoms during or anywhere near the relevant period. With such an absence of records, it would be very difficult for the claimant to carry his burden of proof. I recognize the claimant testified that he did

not have health insurance from January of 2017 to December of 2018. However, he acknowledged that there were free clinics and emergency room treatment available to him. The claimant alleged that these sources did not provide the kind of treatment he needed. I find the fact that he did not have access to exactly the kind of treatment he felt like he needed does not explain or excuse his failure to seek any treatment whatsoever. If the claimant's symptoms were not significant enough to motivate him to avail himself of the treatment to which he had free access, it is difficult to accept his assertion that they were disabling.

(Emphasis added.). Claimant visited the emergency room both preceding the treatment gap and following the treatment gap. The majority opinion provides no reasoning with respect to Claimant's decision not to seek emergency care for his alleged severe back pain, and the majority opinion cites no precedent allowing us to disregard an ALJ's persuasive explanation for disbelieving a claimant's statement about a failure to seek treatment.

For all of these reasons, I would affirm the district court's judgment in favor of the Commissioner.