NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CODY GAGE, | No. 24-6900 |
| Plaintiff - Appellant, | D.C. No. 4:24-cv-05026-RMP |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Submitted November 17, 2025[**]
Seattle, Washington

Before: W. FLETCHER, PAEZ, and DESAI, Circuit Judges.
Partial Concurrence by Judge DESAI.

Cody Gage (Gage) appeals the district court's judgment affirming an

Administrative Law Judge's (ALJ) denial of his application for disability insurance

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

benefits under Title II of the Social Security Act.  We have jurisdiction under 28 U.S.C. § 1291.  We reverse and remand.

"We may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**1. Medical Opinions of FNP Brenda Porco-Smith (Porco-Smith) and PA-C Serenity Kelton (Kelton).**  For claims filed after March 2017, such as Gage's, "ALJs must explain how persuasive they find [a] medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'"  *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (quoting 20 C.F.R. § 416.920c(b)(2)).

The ALJ found the opinions of Porco-Smith and Kelton only partially persuasive.  Specifically, the ALJ was unpersuaded by their recommendations that Gage be limited to two-to-four hours of sitting per day, one-to-two hours at a time. The ALJ found that the sitting limitation recommended by Porco-Smith was not supported by her physical exam, which "did not document any difficulties with sitting" and "stated he had no pain with sitting."  As for consistency, the ALJ

determined that "there is no evidence in treatment notes or consultative exams that supported any difficulty with sitting to warrant those limitations." Turning to Kelton's opinion, the ALJ found that it was not as well supported as other opinions in the record and that the sitting limitation was inconsistent with the medical evidence.

These findings rest on misstatements of the record. Both exams documented Gage's "mild difficulty" and "pain" while rising from his chair, walking to the exam table, and getting on and off the exam table. While Porco-Smith noted that Gage had no pain *in his knees* when sitting, she did not state that he had no pain at all when sitting, or no pain when sitting for extended periods. The ALJ therefore mischaracterized the record when he described Porco-Smith's opinion as "stat[ing] [that Gage] had no pain with sitting." Furthermore, Porco-Smith and Kelton documented long-standing issues with Gage's hips and back through assessments of his pain, range of motion, antalgic gait, and straight leg raises. While the functioning of Gage's hips and back is highly relevant to his ability to sit for extended periods, the ALJ did not consider these findings when evaluating the supportability of the sitting limitation. The ALJ similarly failed to consider the medical evidence of Gage's hip and back impairments when determining the

consistency of the sitting limitation with the record.[1]

Examining the "entire record as a whole," we conclude that the ALJ's analysis of Porco-Smith's and Kelton's opinions constitutes legal error, because the ALJ misstated the record and failed to consider relevant portions of the record. *See Garrison*, 759 F.3d at 1009. Accordingly, remand is warranted for the ALJ to further consider the supportability and consistency of Porco-Smith's and Kelton's opinions on Gage's ability to sit for extended periods.

2. ***Gage's Subjective Symptoms.*** The ALJ failed to offer specific, clear, and convincing reasons for rejecting Gage's testimony related to his hip and mental health symptoms. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Gage testified that his left hip "pops slightly out of the hip socket" when he stands or sits for too long, requiring it to be painfully reset. Gage further testified that he can stand for about twenty minutes or sit for about thirty minutes at a time before he needs to prop up his left leg, while lying on his back, to relieve the pressure.

---

[1] The concurrence concludes that the sitting limitation was inconsistent with Dr. Mark Magdaleno's (Dr. Magdaleno) and Dr. Wayne Hurley's (Dr. Hurley) reviews of the medical record. The ALJ did not, however, rely on or cite to Dr. Magdaleno's or Dr. Hurley's opinions when examining the persuasiveness of Porco-Smith's and Kelton's opinions. Because we "may not affirm the ALJ on a ground upon which he did not rely," remand is required for the ALJ to reconsider the persuasiveness of Porco-Smith's and Kelton's sitting limitation. *See Garrison*, 759 F.3d at 1010.

Gage also stated that when he walks or stands, he leans to his right side to keep pressure off of his left hip, which, in turn, leads to radiating pain in his back, buttocks, and hips. While Gage underwent left hip surgery in 2016, he testified that it "did not help," as he was only given three weeks to recover and then returned to military service.

The ALJ discredited this testimony, in part, because the medical evidence was "mostly unremarkable," as diagnostic imaging "revealed only mild pathology." The ALJ erred because he ignored evidence that shows a worsening prognosis over time in Gage's left hip. Accordingly, the ALJ's singular focus on imaging from one appointment constitutes improper "cherry-picking" of the record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

The ALJ also discredited Gage's hip-related testimony because Gage's history of treatment was "conservative." This reasoning is infirm because it ignores evidence that Gage sought a second hip surgery, but was told by multiple providers that he was ineligible because he was too young. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Finally, the ALJ improperly relied on Gage's activities of daily living to reject his testimony. Performing personal care and household duties, watching television, driving a car, paying bills, and taking care of children and dogs are not inconsistent with symptoms of chronic hip pain that prevent long periods of

standing or sitting. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The only listed activity that appears inconsistent with Gage's testimony is "going to the gym," but this is a misstatement of the record. Gage listed the "gym" as one activity he was "able to do before [his] illnesses, injuries, or conditions that [he] can't do now." This aligns with physical therapy notes from 2019, which show that Gage went to the gym before his disability onset date to try to strengthen his hip and "stand with less pain."

The ALJ made similar errors when evaluating Gage's mental health-related testimony. Gage testified that while his mental health goes "up and down," his "primary" symptoms are anxiety and depression. He also testified about struggling with anger issues and having nightmares "every night," due to his post-traumatic stress disorder (PTSD). The ALJ found that Gage's testimony was inconsistent with the record, which showed "normal" mental status exams, infrequent counseling, and a high level of daily functioning.

These findings cannot stand, as "it is error to reject a claimant's [mental health] testimony merely because symptoms wax and wane in the course of treatment." *See Garrison*, 759 F.3d at 1017. Gage's PTSD is sometimes described as "stable" in the record, but this is not a sufficient basis to discredit Gage's testimony, especially the testimony about his nightmares. There are treatment notes in the record showing that Gage was prescribed various medications for

nightmares, that certain medications "didn't help with his nightmares at all," and that he is "still having trouble sleeping." Further, two psychological opinions that the ALJ found persuasive—one from Dr. Katrina Higgins, and another from Dr. Linda Wolcott—documented the impact of trauma from Gage's military service on his mental health and sleep habits.

While it is true that Gage engaged in minimal mental health treatment since the onset date of his disability, there is no evidence showing that Gage's well-documented issue with nightmares ceased during this time period. The ALJ therefore failed to give reasoned consideration to Gage's testimony on this issue and to provide convincing reasons for rejecting it. The concurrence's contrary view—that the ALJ's discussion of Gage's intellectual and social functioning encompassed his severe nightmares—is not reflected in the record. Accordingly, the ALJ erred by mischaracterizing Gage's mental health history and failing to sufficiently address his issues with nightmares and sleeping. *See Garrison*, 759 F.3d at 1017.

Furthermore, the ALJ failed to consider Gage's testimony explaining his lapse in mental health treatment: that his last doctor retired and that he has had difficulty finding a new one who will work with the Department of Veterans Affairs. *See Carmickle*, 533 F.3d at 1162. Finally, as for the ALJ's reliance on

Gage's activities, none are inconsistent with his mental health symptoms. *See Orn*, 495 F.3d at 639. The ALJ emphasized Gage's participation in an eight-month, online cybersecurity course, for three hours per day, four days per week. The ALJ ignored Gage's testimony, however, that he did not ultimately take the test to obtain the cybersecurity certificate, due to his mental health issues. Gage's cybersecurity course thus cannot be a clear and convincing reason for rejecting Gage's mental health symptom testimony. *Cf. Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining*… employment.").

We do not disturb the ALJ's other findings.

For the above reasons, we **REVERSE and REMAND** with directions to remand this matter to the Commissioner for further proceedings consistent with this disposition.

24-6900

*Gage v. Bisignano*, Case No. 24-6900

DESAI, Circuit Judge, concurring in the judgment and concurring in part:

While I agree that the ALJ failed to provide "specific, clear, and convincing" reasons for discounting Gage's hip pain testimony, *see Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014), I disagree with the majority's holding that the ALJ improperly discounted portions of Gage's mental health testimony and the medical opinions of NP Porco-Smith and PA-C Kelton. Our review of the ALJ's decision is deferential. *See* 42 U.S.C § 405(g); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Here, the ALJ provided sufficient reasons for discounting Gage's mental health testimony and two medical opinions. Thus, I would not disturb these findings by the ALJ and would only vacate and remand for the ALJ to consider Gage's hip pain testimony in its evaluation of Gage's application for benefits. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). I thus concur in the judgment and concur with the majority in part.

An ALJ must provide "specific, clear, and convincing" reasons to discount a claimant's testimony. *Burrell*, 775 F.3d at 1137. "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. An ALJ's decision to discount a medical opinion "must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787, 790–92 (9th Cir. 2022) (citing 42 U.S.C. § 405(g)).

1

Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citation modified).

1. The ALJ did not provide specific, clear, and convincing reasons to discount Gage's hip pain testimony, but it did provide specific, clear, and convincing reasons to discount Gage's mental health testimony. First, the ALJ explained that Gage's PTSD was "stable and controlled." Indeed, Gage's treatment notes repeat those words. Second, the ALJ explained that Gage's own Patient Health Questionnaire (PHQ) scores indicate "moderate" depression at most. Specifically, the ALJ explained that Gage demonstrated a high level of mental functioning by getting "A" grades in college-level coursework towards a cyber security certificate. Because the ALJ explained that Gage's activities suggest a higher range of functioning, it was proper for the ALJ to discount his testimony. *See Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009) (discounting testimony about the severity of PTSD based on finding that claimant's activities suggested a higher range of functioning).

The majority concludes that the ALJ's reasons for discounting Gage's mental health testimony are not convincing because Gage experiences severe nightmares. But the ALJ considered his nightmares in its decision that Gage's consultative exams showed "average intellectual functioning and memory" and only "some difficulty in

2

social functioning and concentration." The physicians who conducted the exams likewise considered the nightmares but concluded that Gage's mental health interfered only "somewhat with his ability to focus and complete tasks" and only "mildly" with his ability to complete a normal work week. The ALJ sufficiently provided specific, clear, and convincing reasons to discount Gage's mental health testimony, and thus I would affirm the ALJ's decision that his symptoms do not preclude "light work" "limited to simple, routine tasks."

2. Substantial evidence supports the ALJ's decision to discount NP Porco-Smith and PA-C Kelton's two-to-four-hour sitting limitation. First, the ALJ found the limitation inconsistent with the medical record. *See* 20 C.F.R. § 404.1520c(c)(2) (requiring an ALJ to consider consistency). Gage's chiropractor, for example, acknowledged that Gage experiences "low back and hip pain" when he engages in "too much activity" but concluded that "[s]itting is more manageable when using a chair with adequate low back support." And, as the ALJ noted, consulting physicians Dr. Mark Magdaleno and Dr. Wayne Hurley reviewed the medical record and found Gage could sit for six hours. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (affirming ALJ's rejection of a medical opinion because two non-examining physicians contradicted it); *Woods*, 32 F.4th at 791–92.

Moreover, NP Porco-Smith and PA-C Kelton's own exams did not support the sitting limitations. *See* 20 C.F.R. § 404.1520c(c)(1) (requiring an ALJ to consider

3

supportability). Specifically, Dr. Hurley's analysis of NP Porco-Smith and PA-C Kelton's opinions showed negative results on a straight leg raise test while seated, normal bilateral knee range of motion, and only "mild difficulty" rising from a chair. And, contrary to the majority's holding, it is of no moment that NP Porco-Smith found that Gage has no pain "with sitting." This finding does not support a two-to-four-hour sitting limitation and, in fact, it may support the conclusion that Gage does not experience pain when sitting. Taken together, substantial evidence supports the ALJ's decision to discount the medical opinions of NP Porco-Smith and PA-C Kelton.

In sum, the ALJ only failed to provide specific, clear, and convincing reasons to discount Gage's hip pain testimony. The ALJ's decision to discount Gage's mental health testimony and the two medical opinions regarding Gage's sitting limitations should not be disturbed. I thus concur in the judgment and concur in part.

4