FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DANNY RAY FERGUSON,

*Plaintiff-Appellant*,

v.

MARTIN J. O'MALLEY,
Commissioner of Social Security,

*Defendant-Appellee*.

No. 21-35412

D.C. No. 2:19-cv-
01845-MC

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted April 21, 2023
Portland, Oregon

Filed March 14, 2024

Before: Johnnie B. Rawlinson, Carlos T. Bea, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Sung;
Dissent by Judge Rawlinson

# SUMMARY[*]

## Social Security

The panel reversed the district court's judgment affirming the Commissioner of Social Security's denial of claimant's application for disability benefits, and remanded to the district court with instructions to remand to the administrative law judge ("ALJ") to reconsider the credibility of claimant's headache symptom testimony.

The panel held that the ALJ failed to provide clear and convincing reasons for rejecting claimant's symptom testimony regarding the severity of his headaches.

The ALJ impliedly found that claimant's medically determinable impairments could reasonably be expected to cause his headaches. However, in evaluating the medical evidence, the ALJ failed to specify which of claimant's symptoms were, in the ALJ's view, inconsistent with the record evidence. The panel rejected the Commissioner's argument, not asserted by the ALJ, that a claimant must provide independent medical evidence to establish the severity of headaches.

The ALJ's reference to the purported inconsistency between claimant's headache testimony and his daily activities was not a specific, clear, and convincing reason to discount claimant's headache testimony because there was no such inconsistency.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Because the ALJ did not consider Ferguson's conservative treatment when it discounted his subjective symptom testimony, the district court erred when it affirmed the ALJ's decision on that ground.

Judge Rawlinson dissented because the majority opinion fails to apply the substantial evidence standard of review in evaluating the ALJ's decision, rewrites the facts, and fails to properly credit the evidence that supports the ALJ's decision.

## COUNSEL

Alyson R. Young (argued) and Kevin Kerr, Kerr Robichaux & Carroll, Portland, Oregon, for Plaintiff-Appellant.

Daniel P. Talbert (argued), Special Assistant United States Attorney, Social Security Administration, Office of the General Counsel, San Francisco, California; Frederick D. Fripps, Special Assistant United States Attorney; Willy Le, Acting Regional Chief Counsel, Seattle Region X; Renata Gowie, Civil Division Chief; Scott E. Asphaug, Acting United States Attorney; Social Security Administration, Office of the General Counsel, Seattle, Washington; Kevin C. Danielson, Assistant United States Attorney, United States Department of Justice, United States Attorney's Office, Portland, Oregon; for Defendant-Appellee.

## OPINION

SUNG, Circuit Judge:

Danny Ray Ferguson seeks judicial review of a denial of Social Security benefits. The district court affirmed the denial of benefits, and Ferguson timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's order. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (citation omitted). The only issue presented is whether the Administrative Law Judge ("ALJ") erred in rejecting Ferguson's testimony regarding the severity of his headaches. "When an ALJ determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [he] alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806. F.3d 487, 488–89 (9th Cir. 2015). Here, the ALJ failed to provide clear and convincing reasons for rejecting Ferguson's symptom testimony regarding his headaches. Further, the district court erred by affirming for reasons other than those asserted by the ALJ. Accordingly, we reverse and remand.

## I. Background

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). At step two of the disability analysis, the ALJ must determine whether the claimant has any "severe medically determinable" impairments. 20 C.F.R. § 416.920(a)(4)(ii). A "severe impairment" is one that significantly limits a claimant's ability to perform basic work activities. 20 C.F.R.

§ 416.920(c). After reviewing Ferguson's testimony and the medical record, the ALJ determined that Ferguson has multiple severe medically determinable impairments, including a history of epilepsy, Arnold-Chiari malformation type I, headaches, a depressive disorder, borderline intellectual functioning, a specified learning disorder with impairment in reading and math, and a mild neurocognitive disorder. The Arnold-Chiari malformation diagnosis means that part of Ferguson's brain bulges into his vertebral canal. In 2015, Ferguson underwent surgery to treat the malformation.

At his hearing before the ALJ, Ferguson presented medical records that demonstrate he has experienced headaches since he was a child, including prolonged weekly headaches that could last up to a day or two. Ferguson also testified about the symptoms he experienced before and after his 2015 surgery. Before the surgery, he experienced seizures, passing out, and "incredible" pressure in both the front and back of his head. After the surgery, Ferguson enjoyed relief from those symptoms for about two to three months. But then, in his words, "it all rushed back." Ferguson testified that he currently experiences headaches that last up to two days, two or three times a week, and that the headaches cause pressure so intense that he cannot leave his room. In the past, his headaches were triggered by physical labor, but now, there is no identifiable trigger.

A claimant's subjective symptoms, if credited, are relevant to the determination of a claimant's residual function capacity ("RFC"), which is "the most [one] can still do despite [one's] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. 20 C.F.R. § 416.920(e).

In this case, the ALJ discounted Ferguson's testimony regarding the severity and frequency of his headaches when assessing his RFC.[1] In turn, based on that RFC, the ALJ determined at step five that there were sufficient jobs in the national economy that Ferguson could perform and, therefore, that Ferguson was not disabled under the Social Security Act. The district court affirmed. For the reasons stated below, we conclude that the ALJ erred by improperly discounting Ferguson's headache symptom testimony.

## II.  Standard of Review

We review de novo a district court's order that upholds the denial of social security benefits. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). We may set aside an ALJ's decision to deny benefits "only if it is not supported by substantial evidence or is based on legal error." *Id.*

---

[1] The ALJ did not specifically state that Ferguson's testimony regarding the severity and frequency of his headaches lacked credibility. However, the ALJ found that Ferguson's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record," and the ALJ stated that, when determining Ferguson's RFC, it considered "the extent to which [Ferguson's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Further, the RFC indisputably does not include any limitations that account for headaches of the severity and frequency attested to by Ferguson. Thus, Ferguson correctly contends, and the Commissioner acknowledges, that the ALJ impliedly discounted Ferguson's headache symptom testimony. *See Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989) (concluding the ALJ had rejected a claimant's symptom testimony where the ALJ found the claimant credible but determined that he "felt himself more limited than medical evidence established that he was" (cleaned up)). We therefore cannot agree with our dissenting colleague, who reasons the ALJ "accepted Ferguson's [subjective symptom] testimony" because he never explicitly said he had rejected it. Diss. Op. 20–21.

(quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

However, substantial evidence does not support an ALJ's RFC assessment if "the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms." *Lingenfelter*, 504 F.3d at 1035. To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). In this analysis, the claimant is "not required to show that [their] impairment could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis omitted) (citation omitted). Further, the claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* (citation omitted).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (citation omitted). "The

clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]" *Smartt*, 53 F.4th at 499. If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence. *Lingenfelter*, 504 F.3d at 1040 ("Because the ALJ did not provide clear and convincing reasons for excluding Lingenfelter's pain and symptoms from his assessment of Lingenfelter's RFC, substantial evidence does not support the assessment.").

## III. Discussion

In this case, at step one of the ALJ's symptom testimony analysis, the ALJ broadly stated that Ferguson's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Although Ferguson testified about multiple symptoms, including but not limited to headaches, the ALJ did not specify which symptoms his medically determinable impairments could reasonably be expected to cause. *Id.* However, after considering the ALJ's decision in its entirety, we conclude that the ALJ impliedly found that Ferguson's medically determinable impairments could reasonably be expected to cause his headaches. Headaches can be both an impairment and a symptom. *See* SSR 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 84 Fed. Reg. 44,667 (Aug. 26, 2019). Here, the ALJ had already found that there was objective medical evidence of Ferguson's headaches sufficient to establish them as a severe impairment at step two of the five-step disability analysis. Presumably, then, the ALJ also found that Ferguson's severe impairment of headaches can reasonably be expected to cause the symptom

of headaches. Further, the ALJ did not identify any evidence of malingering. Thus, the ALJ was required to move to step two of the symptom analysis. *Garrison*, 759 F.3d at 1014.

At step two of the symptom analysis, the ALJ broadly stated that Ferguson's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Again, the ALJ failed to specify *which* of Ferguson's many symptoms were, in the ALJ's view, inconsistent with the record evidence.

### 1. Medical Evidence

Although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (emphasis added) (cleaned up); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *See Lingenfelter*, 504 F.3d at 1035–38, 1040.

Here, the ALJ never expressly and specifically stated that Ferguson's *headache* symptom testimony was inconsistent with any particular record evidence, as it was required to do. In the symptom-testimony discussion, the

ALJ specifically mentioned Ferguson's headaches only once: The ALJ stated, "upon exam in September 2017, despite continued reports of headaches, the claimant had no neurological deficits with full strength throughout, as well as, a normal mood and affect." We infer from that statement that the ALJ found Ferguson's headache symptom testimony to be inconsistent with the results of his September 2017 exam. But an exam showing "no neurological defects" and a "normal mood," at best, provides a reason to discount Ferguson's testimony about his neurological deficits and mood. The ALJ did not explain, and we do not see, how the absence of neurological defects and a normal mood during a medical exam are inconsistent with Ferguson's testimony about the severity and frequency of his headaches. For example, the ALJ did not identify any evidence indicating that Ferguson cannot experience severe and frequent headaches in the absence of neurological defects. *See Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023) ("[A]s we have recognized, subjective pain is not always verifiable through a physical examination."); 84 Fed. Reg 44,667 (explaining the difference between primary headaches and secondary headaches, the former of which "occur independently and are not caused by another medical condition"). And as we have repeatedly held, at step two of the symptom analysis, the ALJ cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony. *See Smartt*, 53 F.4th at 498.

The ALJ also discussed the fact that Ferguson underwent "posterior fossa decompression" surgery to treat his Arnold-Chiari type 1 malformation. However, the ALJ did not expressly state that the fact that Ferguson underwent surgery is inconsistent with his headache testimony. Nor did the ALJ identify any reason for finding such an inconsistency, and

we see none. Ferguson testified that, after the surgery, his headaches went away for a short period of time but then returned. But the ALJ did not identify any evidence indicating that the posterior fossa decompression surgery was guaranteed to eliminate Ferguson's headaches, or that his headaches could not return after the surgery. To the contrary, Ferguson's surgeon warned him that the "risks" of the "spinal neurosurgery" included "recurrence, failure to improve, [and] need for further surgery," and that there were no guarantees.

The ALJ also noted that post-surgery neurological-function exams "indicated some signs of diminished functioning, but not progressive worsening." Those exam results might be inconsistent with Ferguson's testimony "that his memory and stumbling [had] progressively worsened." But the ALJ failed to explain, and we do not see, how such neurological-function exam results are inconsistent with Ferguson's headache testimony.

Finally, as the dissent notes, the ALJ stated that it considered the notes of Dr. Rowh and Dr. Lin, both consulting physicians, who reported that "[e]xertion typically worsens Ferguson's headache symptoms" and documented specific incidents when physical labor "exacerbate[d] the severity of the headache" or "significantly elevated" his pain. Diss. Op. at 19. But evidence that physical labor exacerbates Ferguson's headaches has no bearing on the credibility of his testimony that he experiences headaches—which last for up to two days and are so severe that he cannot leave his room—

without any identifiable triggers.[2] And again, the ALJ failed to explain, and we do not see, how the evidence that Ferguson's headaches worsen with physical labor is inconsistent with his testimony that he experiences headaches when he is not engaged in physical labor.[3]

---

[2] The ALJ stated it "accounted for [Ferguson's] reports of worsening headaches with physical work labor" in the RFC, but the ALJ did not account for the underlying headache symptoms that Ferguson experiences even without physical labor.

[3] The dissent reasons that we improperly engage in de novo review of the medical evidence the ALJ considered when it discounted Ferguson's symptom testimony. Diss. Op. at 18–19. Not so. We express no view as to whether, on remand, the medical evidence could provide substantial evidence to discount Ferguson's subjective symptom testimony. We merely reaffirm the principle that, to discount a claimant's subjective symptom testimony at step two of the symptom analysis, the substantial evidence standard requires an ALJ to provide specific, clear, and convincing reasons for doing so that comport with this Circuit's precedents. *See Lingenfelter*, 504 F.3d at 1035, 1040; *see also Garrison*, 759 F.3d at 1015 (noting this standard "is not an easy requirement to meet" and is "the most demanding required in Social Security cases" (citation and internal quotation omitted)). That is precisely how we have long reviewed ALJ decisions with respect to this issue under the substantial evidence standard. *See, e.g.*, *Robbins*, 466 F.3d at 884 (holding an ALJ improperly discounted subjective symptom testimony that it found inconsistent with the medical evidence in part because the ALJ did not "make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight, as he is required to do" (internal quotation and citation omitted)); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792–93 (9th Cir. 1997) (remanding because "the ALJ failed to articulate an acceptable reason either for disbelieving Light's testimony in general or for discrediting his pain testimony specifically"); *Glanden*, 86 F.4th at 846–48 (holding an ALJ improperly discounted symptom testimony because it did so based on medical evidence that "did not fully substantiate Glanden's pain reports," in

On appeal, the Commissioner argues that we should affirm for another reason that the ALJ did not assert: The Commissioner argues that under 20 C.F.R. § 416.929(b) and *Britton v. Colvin*, 787 F.3d 1011 (9th Cir. 2015) (per curiam), "a claimant must present 'independent medical evidence' to establish the existence and severity of his alleged headaches, and cannot rely only on his own subjective statements." Even assuming we can consider this argument, we conclude that it does not provide an alternate basis for affirming the ALJ's decision.

The cited regulation, 20 C.F.R. § 416.929(b), provides that a claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." That regulation, however, has no bearing on this case, because the ALJ determined that Ferguson has multiple severe, medically determinable impairments—including headaches.

The Commissioner also significantly overstates the holding of *Britton*. In that case, a medical expert testified that Britton experienced migraines three to four days a month, lasting two to four hours each. *Britton*, 787 F.3d at 1013–14. The ALJ gave no weight to the expert's testimony about the severity and frequency of Britton's migraines because the expert relied *exclusively* on Britton's own testimony, which the ALJ had deemed not credible as to the severity or frequency of her migraines. *Id.* at 1014. In that case, unlike

---

contravention of the rule that an ALJ cannot require positive medical evidence). As noted, here, the ALJ did not provide *any* specific, clear, and convincing reasons as to why the medical evidence was inconsistent with Ferguson's *headache* testimony specifically.

here, Britton did not contend that the ALJ erred by deeming her underlying migraine testimony not credible. Because the expert relied exclusively on symptom testimony that the ALJ had *properly* deemed not credible, and there was "no independent medical evidence" establishing the severity or frequency of Britton's migraines, we concluded that the ALJ did not err by disregarding the expert's testimony. *Id.* at 1013–14. We did not hold, as the Commissioner asserts, that a claimant *always* must provide independent medical evidence to establish the severity of their headaches and can *never* rely on their own symptom testimony—even when the ALJ fails to identify any specific, clear, and convincing reason to discount that testimony.

Neither the regulation nor *Britton* establish the Commissioner's purported rule. Moreover, the Commissioner's purported rule (that a claimant must provide independent medical evidence to establish the severity of headaches) conflicts with the longstanding and well-established rules that a claimant is "*not* required to show '[that their medically determinable] impairment could reasonably be expected to cause the severity of the symptom [they have] alleged,'" and is *not* required to "produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Garrison*, 759 F.3d at 1014 (emphasis in original) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

## 2.  Daily Activities

"Only if the level of activity [is] inconsistent with Claimant's claimed limitations" do daily "activities have any bearing on Claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "We have repeatedly warned that ALJs must be especially cautious in concluding that

daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016.

The ALJ stated, "Activities the claimant has performed during the period at issue further supports finding that in spite of his symptoms he remained capable of some degree of sedentary, simple work." The ALJ noted that Ferguson's daily activities include "watching television and playing video games," "help[ing] care for his mother's wild cats," "prepar[ing] simple meals," "going out to his shop to work on projects" (such as a model house), and "walk[ing] every now and then." The ALJ also noted that some reports indicated that Ferguson "attended to basic self-care and remained capable of driving a vehicle." But, the ALJ did not explain how, in his view, Ferguson's testimony about those daily activities is inconsistent with his testimony about the severity and frequency of his headaches. And we see no reasonable inference that such an inconsistency exists. Ferguson testified that he experiences headaches two or three times a week, and that sometimes, the headache lasts "a day or two." Further, Ferguson testified that when he experiences headaches, he does not "get out of [his] room," and he does "nothing." Ferguson can both do nothing when he has severe headaches and engage in his daily activities when he does not. *See Garrison*, 759 F.3d at 1015–16 (reversing and remanding for an award of benefits in part because the ALJ improperly relied upon claimant's daily activities—talking on the phone, preparing meals, cleaning her room, and caring for her daughter—to discredit her testimony regarding "near-constant, intense pain" because those activities are not inconsistent with those symptoms).

Ferguson need not "vegetate in a dark room" to qualify for disability. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981)).

Because there is no inconsistency between Ferguson's headache testimony and his daily activities, the ALJ's reference to that purported inconsistency is not a specific, clear, and convincing reason to discount Ferguson's headache testimony.

### 3.  Conservative Treatment

The district court also reasoned that Ferguson "has had minimal treatment" for headaches and that "conservative treatment supports the ALJ's finding that his symptoms are not as severe as alleged." Putting aside the question of whether the district court's characterization of Ferguson's treatment is accurate, the district court erred by affirming the ALJ's determination for a reason that the ALJ did not assert. "[W]e can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter*, 806 F.3d at 492. This means that courts can consider only "the reasons the ALJ asserts." *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Thus, because the ALJ did not consider Ferguson's conservative treatment when it discounted his subjective symptom testimony, the district court erred when it affirmed the ALJ's decision on that ground. *See Brown-Hunter*, 806 F.3d at 492.

### IV.  Conclusion

In sum, substantial evidence does not support the ALJ's RFC assessment because the ALJ did not articulate any specific, clear, and convincing reasons for discounting

Ferguson's headache symptom testimony. *See Lingenfelter*, 504 F.3d at 1035, 1040. The district court also erred by affirming the ALJ's decision based on reasons the ALJ did not discuss. *See Brown-Hunter*, 806 F.3d at 492. The Commissioner does not contend that the ALJ's error was harmless. Consequently, we reverse the judgment of the district court with instructions to remand to the ALJ to reconsider the credibility of Ferguson's headache symptom testimony in a manner consistent with this opinion. *See Connett*, 340 F.3d at 876.

**REVERSED AND REMANDED.**[4]

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion for the following three reasons:

1.  The majority opinion fails to apply the governing standard of review.

2.  The majority opinion rewrites the facts of the case.

3.  The majority opinion fails to properly credit the evidence that supports the decision of the Administrative Law Judge (ALJ).

I will address each in turn.

---

[4] Defendant-Appellee shall bear all costs of appeal. *See* Fed. R. App. P. 39(a)(3).

### 1. The majority opinion fails to apply the governing standard of review.

When reviewing decisions of an ALJ, we apply the substantial evidence standard of review. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). This is a deferential standard of review. *See Smith v. Califano*, 637 F.2d 968, 970 (9th Cir. 1981). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla but may be less than a preponderance. . . ." *Ahearn*, 988 F.3d at 1115 (citation omitted). This standard "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The United States Supreme Court has compared the substantial evidence standard to that of clear error. *See id.* And we have described this standard as "modest." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

In applying the substantial evidence standard of review, "if evidence exists to support more than one rational interpretation, we must defer to the [ALJ's] decision." *Batson v. Comm'r*, 359 F.3d 1190, 1193 & n.1 (9th Cir. 2004) (citation omitted).

The majority opinion cites the substantial evidence standard of review but fails to apply it in evaluating the decision of the ALJ. The majority opinion gives absolutely no deference to the decision of the ALJ. Rather, it is apparent that the majority opinion applies a *de novo* standard of review. The majority evaluates the evidence of Ferguson's symptom testimony independently. *See Majority Opinion*, pp. 9-12 (analyzing Ferguson's symptom testimony and medical records and discounting the opinions of the consulting physicians); *see also*, p. 12 (observing that the majority "do[es] not see how such neurological-function

exam results are inconsistent with Ferguson's headache testimony." This *de novo* review flouts the applicable substantial evidence standard of review. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (cautioning that "[w]here the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ") (citation, alteration, and internal quotation marks omitted). The ALJ based his decision on the opinions from the medical providers. *See ALJ Decision*, pp. 18-21. In particular, the ALJ referenced the treatment notes from Dr. Rowh indicating that Ferguson's headaches worsened with exertion. However, Dr. Rowh did not find that the headaches affected Ferguson's cranial nerves, cognition, or cerebellar function. After reviewing the medical records that contained observations similar to that of Dr. Rowh, the consulting physicians opined that despite severe medical impairments, including the headaches, Ferguson was not disabled, but could perform sedentary work that avoided exposure to noise. The majority's *de novo* analysis that contradicts the expert opinions on which the ALJ relied conflicts completely with our precedent. *See id.*

## 2. The majority opinion rewrites the facts of the case.

It is clear from his decision that the ALJ did not reject Ferguson's symptom testimony. Rather, the ALJ noted that Ferguson's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." In short, although the ALJ accepted Ferguson's testimony that his headaches constituted a severe medical impairment, he relied on the opinions from the consulting physicians that the headaches did not prevent Ferguson from working. The ALJ incorporated those opinions into his

determination of Ferguson's ability to perform sedentary work by avoiding the exertion that exacerbated his headaches, and "concentrated exposure to noise" that might trigger his headaches.[1]

Despite the clear record of the ALJ's acceptance of Ferguson's symptom testimony, the majority nevertheless maintains that the ALJ rejected Ferguson's testimony. *See Majority Opinion*, p. 4. The majority relies on *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir. 1989), to support its contention that the ALJ rejected Ferguson's symptom testimony. *See Majority Opinion*, p. 6, n.1. However, that case does not support the majority's claim that the ALJ rejected Ferguson's symptom testimony. As an initial matter, in *Swenson* we determined that the ALJ found the claimant credible, not that the ALJ rejected the claimant's testimony. *See Swenson*, 876 F.2d at 688. Nevertheless, in *Swenson*, we found error because the ALJ's conclusion was contradicted by the medical evidence, including that of "the only expert to give an opinion of Swenson's functional ability." *Id.* That is not the case before us. Here, the ALJ found that Ferguson's testimony concerning "the limiting effects of [his] symptoms [is] not entirely consistent *with the medical evidence*." The ALJ's conclusion regarding the severity of Ferguson's symptoms was *not* contradicted by the medical evidence. Rather, it was consistent with that of

---

[1] The majority opinion concludes that the ALJ erred by failing to account for the claimant's testimony regarding headaches when he was not engaged in physical exertion. *See Majority Opinion*, p. 12. However the ALJ relied on the medical evidence that there was "no clinical sign to suggest intracranial pressure" and that Ferguson "had a negative CT scan of the brain," as well as Ferguson's testimony that he spent "75% of [his] time . . . on [his] phone" playing games and "looking through Facebook," which would be inconsistent with debilitating headaches.

the two experts "to give an opinion of [Ferguson's] functional ability."  *Id.*; *see also Rounds v. Comm'r*, 807 F.3d 996, 1006 (9th Cir. 2015), *as amended* (discerning no error in the ALJ's discounting of claimant's testimony that was not consistent with the opinions of two medical experts "regarding [the claimant's] functional capabilities").

The majority continues to insist that the ALJ failed to give "specific, clear, and convincing reasons" for discounting Ferguson's symptom testimony.  *Majority Opinion*, p. 12 n.3.  But our precedent has regularly upheld the discounting of symptom testimony that conflicts with expert medical opinion and/or is inconsistent with the claimant's daily activities.  *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (concluding that the ALJ properly discounted the claimant's  testimony that was not supported by the medical experts' "mild or moderate, rather than disabling" assessments of impairment) (citation, alteration, and internal quotation marks omitted); *see also Smartt v. Kijakazi*, 53 F.4th 489, 496-97 (9th Cir. 2022) (holding that the ALJ properly discounted the claimant's "subjective pain testimony" that was inconsistent with "the objective medical evidence" and the claimant's daily activities); *Ahearn*, 988 F.3d at 1116-17 (determining that "[s]ubstantial evidence support[ed] the ALJ's conclusion that the medical record was inconsistent with the severity of the limitations [the claimant] described in his testimony"); *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009) (reasoning that the ALJ's discounting of the claimant's testimony was proper because the claimant's "statements at her hearing [did] not comport with objective evidence in her medical record"); *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (affirming ALJ's rejection of the claimant's testimony as inconsistent with daily activities and the medical record).

**3.  The majority opinion fails to properly credit the evidence that supports the decision of the ALJ.**

In reviewing the ALJ decision, we must consider all the evidence, including the evidence that supports the ALJ's decision. *See Garrison*, 759 F.3d at 1010.  But the majority ignores the evidence supporting the ALJ's decision.  In addition to the evidence from the consulting physicians discussed above that supported the ALJ's decision, the ALJ also referenced Ferguson's activities that were inconsistent with the headaches being disabling.  For example, the ALJ pointed to Ferguson's report that his *daily* activities included watching television, playing video games, helping to care for his mother's wild cats, preparing simple meals, working on projects in his shop (such as a model house), and attending to his self-care.  He was also "capable of driving a vehicle." We have upheld reliance on similar daily activities to support a determination that a claimant was not disabled. *See Smartt*, 53 F.4th at 499-500 (explaining that "[e]ven if the claimant experiences some difficulty or pain, [his] daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," and concluding that the claimant's daily activities of cooking, cleaning, "doing crafts," and "completing various chores, albeit in short increments due to pain," supported the ALJ's decision) (citation and internal quotation marks omitted); *Ahearn*, 988 F.3d at 1117 (determining that the claimant's "daily activities provide[d] substantial evidence to support the ALJ's decision" because the claimant "had the ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to

socialize with friends, and to perform household chores"); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (concluding that the ALJ's decision was supported by substantial evidence based in part on claimant's "self-reported activities" that he "drove his car and did crossword puzzles, computer work, pet care, cooking, laundry and other house-keeping").   The ALJ's reliance on these daily activities was also consistent with the opinion of the consulting physicians that Ferguson's headaches were not disabling.

The majority does not credit this evidence as sufficiently substantial to support the ALJ's decision.   However, as noted, the substantial evidence standard "is not high." *Biestek*, 139 S. Ct. at 1154.   Rather, it is a "modest" one. *Smith*, 14 F.4th at 1111.   And "if evidence exists to support more than one rational interpretation, we must defer to the [ALJ's] decision." *Batson*, 359 F.3d at 1193 & n.1 (citation omitted).   Even if the majority's *de novo* interpretation of the record is a rational one, so is the interpretation of the ALJ, as it is supported by the opinions of the consulting physicians that Ferguson's headaches were not disabling, and by the evidence of Ferguson's daily activities.   Under our precedent, these facts required deference to the ALJ's decision, *see id.*, which the majority fails to afford it. *See Garrison*, 759 F.3d at 1010 ("The ALJ is responsible for determining credibility". . .) (citation omitted).

In sum, because the majority fails to apply the applicable standard of review, rewrites the facts, and fails to properly credit evidence that supports the ALJ's decision, I respectfully dissent.