NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROBERT LAROQUE,

　　　　　Plaintiff-Appellant,

　v.

MARTIN J. O'MALLEY,

Commissioner of Social Security

　　　　　Defendant-Appellee,

No.　22-35975

D.C. No. 2:21-cv-000095-JAG

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of Washington
James A. Goeke, Magistrate Judge, Presiding

Argued and Submitted March 29, 2024
Seattle, Washington

Before: W. FLETCHER, PARKER,** and MILLER, Circuit Judges.
Dissent by Judge MILLER.

　　　Robert LaRoque, a 30-year-old homeless man who failed to graduate from

high school and received special education, struggles with an array of physical and

---

　　　*　This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

　　　**　The Honorable Barrington D. Parker, Jr., United States Circuit Judge
for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

1

mental disorders, and has never had gainful employment, appeals an order of the district court affirming the decision to deny him supplemental security income benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we vacate and remand.

In the case of LaRoque, three medical opinions—Dr. Lauren Kendall's, Dr. Dominika Breedlove's, and Dr. Melanie Edwards Mitchell's— were improperly discounted based on cherry-picking the record. Additionally, the fact that LaRoque was homeless and of highly limited financial means was not properly considered as an explanation for the disparity between the professed severity of his symptoms and his relatively little medical treatment. The Administrative Law Judge ("ALJ") did not take this explanation into account when considering the three medical opinions and also when partially discounting LaRoque's testimony about the severity of his symptoms. Accordingly, we cannot confidently conclude that the ALJ's determination of "non-disabled" was supported by substantial evidence. In particular, we note that (1) Dr. Kendall stated LaRoque had the types of limitations in his ability to work that the vocational expert testified would prevent a person from maintaining employment, and (2) the ALJ did not provide clear and convincing reasons for disregarding the role of LaRoque's homelessness and poverty when evaluating his testimony. For these reasons, we remand for the ALJ to reconsider both of these areas.

2

This Court reviews a district court's order affirming the ALJ's denial of social security benefits *de novo* and "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020)). "Overall, the standard of review is highly deferential." *Id.* (quoting *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015)). At the same time, this Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014)). "[S]ubstantial evidence does not support an ALJ's [residual functional capacity ("RFC")] assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). Here, substantial evidence does not support the ALJ's RFC assessment because the ALJ improperly rejected three medical opinions and LaRoque's testimony.

1. Dr. Kendall, who had treated LaRoque since childhood, stated in her opinion that due to LaRoque's various physical and mental conditions, he would miss four or more days of work on average per month and that he would be off-task and unproductive more than 30 percent of the time during a 40-hour work

3

week.  Dr. Breedlove determined that the overall severity of the combined impact of LaRoque's diagnosed mental impairments was "marked," where the choices were "mild," "moderate," "marked," and "severe," and that he has specifically "marked" limitations in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerance without supervision, and completing a normal work day and work week without interruptions from psychologically-based symptoms.  Dr. Mitchell concluded that LaRoque had a poor prognosis for gainful employment and a likely need for long-term resources. The ALJ discounted all three of these medical opinions (while deeming persuasive the state agency medical and psychological consultants in a summary fashion). The ALJ's decision to reject these medical opinions, especially Dr. Kendall's, was based on mischaracterizing or cherry-picking the record and, as a result, we cannot conclude that these opinions were properly discounted.

For claims filed on or after March 27, 2017, there is no "special deference to the opinions of treating and examining physicians," like Dr. Kendall. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see* 20 C.F.R. § 404.1520c(a). However, it remains the case that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.  Here, the ALJ claimed that Dr. Kendall's opinion was inconsistent with the record because, the

4

ALJ concluded, LaRoque's symptoms were merely exacerbated in June 2019 and were otherwise "minimal." However, the record indicates that LaRoque struggled with his symptoms well outside of June 2019. For example, in January 2019, LaRoque sought help from Dr. Kendall for, among other reasons, moderate recurrent major depression with insomnia and poor memory, and in May 2019, he sought help for depression, anxiety, and poor sleep, and stated, "I have been so down and depressed. I just feel like I am worthless and no one accepts me for who I am." In March 2020, LaRoque sought medical help with his chief complaints being depression and anxiety. Additionally, the ALJ also mischaracterized Dr. Kendall's treatment notes as "largely unremarkable," but even the notes the ALJ cited in support suggest just the opposite with Dr. Kendall noting that LaRoque has an "exceptionally depressed affect," that he is "disheveled, tearful, labile," that he has "chronic, ongoing full-body aches and soreness" that are "[w]orse with more anxiety and with more activity," and that he has been on many medications but "all meds make [him] feel horrible." An ALJ must read a doctor's treatment notes "in full and in context." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). An ALJ may not be "selective in his reliance" on only portions of a doctor's treatment notes or isolate a few examples from the notes to find an artificial contradiction between the doctor's observations and opinions. *Id.* We believe that is what the ALJ did here.

We are particularly concerned with the ALJ's dismissal of Dr. Kendall's opinion because according to the vocational expert—whose testimony was accepted by the ALJ—the limitations Dr. Kendall identified would render LaRoque unable to maintain employment. At the hearing, the vocational expert testified that a person who would be off-task 15 to 20 percent of the time and miss work more than one day a month would not be able to maintain employment. As noted above, Dr. Kendall opined that LaRoque would be off-task more than 30 percent of the time and miss work four or more days a month. The ALJ relied on the vocational expert's testimony, but according to the vocational expert, a person with the limitations that Dr. Kendall identified could not hold a job. As such, the identified errors cannot be deemed harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("An error is harmless only if it is inconsequential to the ultimate nondisability determination." (quotation marks and citation omitted)).

Our concerns extend to the ALJ's treatment of Dr. Breedlove's and Dr. Mitchell's opinions. The ALJ dismissed Dr. Breedlove's opinion as inconsistent with the longitudinal medical evidence, but for the reasons explained above, the ALJ appears to have overlooked key portions of the record showing that LaRoque had serious symptoms that persisted beyond a limited period. The ALJ also faulted Dr. Breedlove for justifying her limitations based on LaRoque's poor work history and insight because, the ALJ claimed, that "co-mingles an unacceptable reason for

6

limiting the claimant—work limitations are to be caused by medically determinable impairments, not by the claimant's previous work experience." However, the ALJ mischaracterized what Dr. Breedlove said: she did not make these remarks as an explanation for the limitations she identified, but in the context of explaining why she thought vocational training or services would help LaRoque.

Further, the ALJ found that Dr. Breedlove's "significant limitations are inconsistent with her generally moderate findings," but this appears to be the ALJ substituting his own opinion for that of a doctor. Dr. Breedlove identified individual tasks that LaRoque could and could not do; for example, LaRoque could spell "world" backwards, but could not name the governor of Washington, state how many weeks were in a year, or count backwards by threes from 20. The ALJ cherry-picked findings from Dr. Breedlove's evaluation to reject the limitations she identified, which was impermissible. An ALJ is not free to substitute his own lay opinion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (holding that an ALJ may not make his own medical assessment beyond that demonstrated by the record). The ALJ discounted Dr. Mitchell's opinion because she was so reliant on Dr. Breedlove's, which in and of itself is not necessarily problematic. But because we find that Dr. Breedlove's opinion was not properly discounted, we cannot say that Dr. Mitchell's was, either.

2. Overall, our most significant concern with the ALJ's analysis is that he discounted both Dr. Kendall's opinion and LaRoque's testimony because of a relative lack of medical visits and treatment notes. While a dearth of medical visits can be a legitimate basis to discount the alleged severity of a claimant's symptoms, an ALJ must consider the explanations for the lack of treatment. "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199.

Here, the ALJ failed to properly grapple with a clear reason for the perceived dearth in treatment: LaRoque's homelessness and poor financial situation and the resultant limitation on his ability to seek medical care. A medical professional noted of LaRoque during a March 2020 visit, "I have not seen him for 4 months[,] but I also understand that he *deals w/chronic homelessness and that he has very little financial means for food etc*[.]" (emphasis added). A claimant's lack of treatment should not count against his credibility if the record shows he lacked access due to his financial means or homelessness. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). Thus, aside from the fact that an "ALJ cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony," *Ferguson*, 95 F.4th at 1201 (emphasis in original)—as the ALJ appeared to do by relying on a relative absence in

8

treatment—an ALJ also cannot choose to wholly overlook an explanation for a claimant's lack of treatment. The ALJ's failure to consider the potential impact of LaRoque's homelessness and poverty on his ability to seek and maintain treatment influenced the evaluation of not only Dr. Kendall's opinion, but also LaRoque's testimony about the severity of his symptoms.

We agree with the dissent that when the evidence is open "to more than one rational interpretation," the ALJ's conclusion must be upheld, *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)), but an interpretation is not rational when it relies on cherry-picking the record. An interpretation also is not rational if it does not take into consideration explanations for the claimant's conduct regarding his treatment. As noted, we are dealing with a 30-year-old individual who has never held gainful employment and is homeless. Before we can conclude he is not entitled to supplemental security income benefits, we require a record that grapples with the issues we have identified, namely through, *inter alia*, reconsideration of the relevant medical opinions and of LaRoque's testimony regarding his symptoms.

**VACATED and REMANDED.**

*LaRoque v. O'Malley*, No. 22-35975

MILLER, Circuit Judge, dissenting:

The ALJ evaluated medical opinions, prior medical findings, and LaRoque's symptom testimony to conclude that LaRoque was not disabled. Under the substantial evidence standard, we must "defer[] to the presiding ALJ, who has seen the hearing up close," *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019), taking care not to "'second-guess' an ALJ's reasonable interpretation of a claimant's testimony," *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)). Because the ALJ's conclusion is supported by substantial evidence, I would affirm.

Under the revised social security regulations, we no longer "accord[] special deference to the opinions of treating and examining physicians." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see* 20 C.F.R. § 404.1520c(a). Instead, the ALJ must explain whether he finds medical opinions persuasive based on the extent to which they are (1) supported by "relevant . . . objective medical evidence" and "explanations presented by a medical source," and (2) "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(1)–(2).

The ALJ reasonably discounted Dr. Kendall and Dr. Breedlove's opinions because they were inconsistent with the medical evidence in the record and

1

LaRoque's treatment history. Dr. Kendall opined that LaRoque would be "off-task and unproductive" for over 30 percent of the workweek. Dr. Breedlove likewise opined that LaRoque would have "marked" limitations in several areas, including his ability to maintain a regular work schedule and appropriate behavior in a work setting. Dr. Kendall's treatment notes from February and June 2019 note an exceptionally depressed affect and chronic pain, but her notes from June 2019 also state that LaRoque appeared healthy, had good insight and orientation, and was active and alert. And while Dr. Breedlove observed that LaRoque exhibited "very limited" insight and abnormal judgment, she also observed that he showed "unremarkable" motor activity, a cooperative attitude, and normal speech, eye contact, facial expressions, affect, orientation, and memory. Although LaRoque incorrectly answered several basic questions testing his knowledge, concentration, and abstract thought, Dr. Breedlove nevertheless determined that he was within the "normal" range for each category.

Those inconsistencies provided a reasonable basis for discounting Dr. Kendall and Dr. Breedlove's opinions. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))); *Smartt*, 53 F.4th at 499. Because the ALJ

reasonably discounted Dr. Breedlove's opinion, he could also discount Dr. Mitchell's opinion, which was derivative of Dr. Breedlove's.

LaRoque alleged that he experienced constant migraines, fevers, stomach flus, and nausea—to the point that he could not get out of bed—but he did not seek any regular care for those symptoms. LaRoque argues that his lack of treatment history is an illegitimate basis for discounting Dr. Kendall's opinion and his own symptom testimony. But because symptoms "are subjective and difficult to quantify," information about the treatments a claimant has received is "an important indicator of the intensity and persistence of [his] symptoms." 20 C.F.R. § 416.929(c)(3). The ALJ rightly observed that if LaRoque's impairments were truly as severe as he claimed, one "would expect to at least see more visits to the emergency department," especially given that LaRoque "has proven able to seek medical attention when he needs to."

Although an "ALJ cannot rely on an absence of positive medical evidence to discredit a claimant's subjective symptom testimony," *Ferguson v. O'Malley*, 95 F.4th 1194, 1201 (9th Cir. 2024) (emphasis omitted), the ALJ here did not rely on a lack of medical *proof* of LaRoque's symptoms. Instead, the ALJ drew a permissible inference from LaRoque's seeming unwillingness to seek medical attention for his allegedly debilitating symptoms. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant complains about disabling pain but fails to

3

seek treatment, . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").

LaRoque faults the ALJ for failing to consider his homelessness and limited financial means as explanations for his failure to seek treatment. But the only evidence he cites in support of his argument is a statement from a medical professional who "ha[d] not seen him for 4 months" but understood that "he deals [with] chronic homelessness" and "has very little financial means." Other evidence in the record—such as LaRoque's refusal of prescribed treatments and medications—suggests non-financial reasons for his failure to seek treatment. *See* 20 C.F.R. § 416.929(c)(4) (explaining that the ALJ "consider[s] whether there are any inconsistencies" and "conflicts between [the claimant's] statements and the rest of the evidence"). Given the lack of evidentiary support for LaRoque's claim that his financial situation explains his treatment history, the ALJ did not err in declining to address it.