NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 24 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MYA NOELIA FALLON,

Plaintiff - Appellant,

v.

LELAND DUDEK, Acting Commissioner
of Social Security,

Defendant - Appellee.

No. 24-241

D.C. No.
2:22-cv-01877-JAT

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Submitted October 23, 2024[**]
Phoenix, Arizona

Before: M. SMITH, BADE, and FORREST, Circuit Judges.

Mya Noelia Fallon appeals from the district court's decision affirming the

Commissioner of Social Security's denial of her application for Supplemental

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Security Income under the Social Security Act.[1] We have jurisdiction under 28 U.S.C. § 1291. We review the district court's order de novo and reverse only if the Administrative Law Judge's (ALJ) decision was not supported by substantial evidence or was based on legal error. *Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020). We reverse and remand.

1.      ***Evaluation of Medical Evidence.*** Fallon argues that the ALJ erred by discounting the opinions of Doctors Rabara and O'Connell to the extent they proposed more severe limitations than Fallon exhibited in her daily activities. Under the pre-2017 regulations that apply to Fallon's application, an ALJ may only discount the opinions of treating or examining doctors for "clear and convincing" reasons. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Farlow v. Kijakazi*, 53 F.4th 485, 488 & n.3 (9th Cir. 2022). The standard is "the most demanding required in Social Security cases." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir 2024) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)).

The ALJ's recounting of Fallon's activities did not provide a clear and convincing reason to discount Dr. Rabara's and Dr. O'Connell's opinions. The ALJ's blanket statement does not account for Fallon's limitations in those

---

[1]In addition to the issues addressed in this memorandum, Fallon appeals the district court's reliance on the law-of-the-case doctrine in refusing to revisit the opinions of Dr. Joseph Drazkowski and licensed professional counselor Terry Galler. We address this issue in a concurrently published opinion and affirm the district court's application of this doctrine.

activities.[2] Nor did the ALJ explain how or what specific parts of the provider statements are inconsistent with Fallon's activities. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (explaining that the ALJ erred when she "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony"). Although we do not "require ALJs to draft dissertations when denying benefits," the ALJ's "brief discussion," sweeping aside the testimony of two doctors, among other evidence, all in a couple of general sentences, was "insufficient." *Cf. Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

**2.** ***Evaluation of Fallon's Testimony.*** Fallon also argues that the ALJ erred in assigning only partial weight to her testimony. As with medical evidence, an ALJ may only reject a claimant's symptom testimony for clear and convincing reasons when, as here, there is objective medical evidence that the claimant has a condition that can be expected to result in the symptoms she described. *Ferguson*, 95 F.4th at 1199. As with the medical evidence, the ALJ summarily rejected Fallon's symptom testimony to the extent it was inconsistent with her daily

---

[2] The ALJ found that Fallon runs, hikes, performs calisthenics, has spent hours picking corn, plays golf with friends, and participates in dance classes; she also takes a full load of community college courses while receiving Bs and Cs. Fallon provided greater context: her success in school comes with significant assistance from tutors, she struggles to remember her dance routines, was supervised by her siblings while detasseling corn, and has difficulty completing the basic tasks of daily life in many other contexts.

activities. We likewise reverse and remand as to that conclusion. At the same time, Fallon does not challenge, and we do not disturb, the ALJ's conclusion that Fallon's seizures are "substantially controlled," notwithstanding Fallon's testimony about her episodes of auras.

**3.** ***Evaluation of Lay Evidence.*** The ALJ also discredited Fallon's relatives' testimony to the extent it was inconsistent with Fallon's daily activities. An ALJ may discount the opinion of lay witnesses when he provides reasons that are "germane to each witness." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quotation omitted). The Commissioner argues only that the relatives' statements were properly discounted for the same reasons as Fallon's statements. Because we remand as to Fallon's statements, we also remand for the ALJ to reconsider her relatives' testimony.

**4.** ***Step-Five Determination.*** An ALJ must "set out *all* the limitations and restrictions of the particular claimant" when posing a hypothetical question to a vocational expert. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation omitted). When a claimant contends that the hypothetical question was inaccurate because the ALJ inappropriately discounted witness testimony about her limitations, that claim is tethered to the underlying determination about the credit due those witnesses. *See Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023). Because we remand for the ALJ to reweigh various

testimony, we also remand for appropriate reformulations, if necessary, of any hypothetical questions posed to the vocational expert.

Even if we were not remanding for reconsideration of certain evidence, we would reverse and remand the ALJ's Step Five finding that Fallon could perform at least three occupations—agricultural packer, cleaner II, and harvest worker—that exist in significant numbers in the national economy based on Fallon's Residual Functional Capacity (RFC). All parties agree that the first two occupations are inconsistent with Fallon's currently defined RFC. And it is unclear from the record whether harvest worker also poses a conflict. *See Massachi v. Astrue*, 486 F.3d 1149, 1153–54, 1154 n.19 (9th Cir. 2007). The ALJ found that Fallon is "unable to perform work that requires counting." But harvest worker is classified at Mathematical Development Level 1 and may require the employee to "[a]dd and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5." Dep't of Lab., Dictionary of Occupational Titles, App'x C, 1991 WL 688702 (4th ed. 1991); *see also* Dep't of Lab., Dictionary of Occupational Titles § 402.687-014, 1991 WL 673298 (4th ed. 1991) (clarifying that harvest workers may be required to "tie vegetables *into specified size* bunches." (emphasis added)). Because the upper limit of Level 1 conflicts with Fallon's inability to count as described in her RFC, the ALJ was required to determine whether the vocational expert reasonably accounted for that conflict and whether there are significant

numbers of harvest worker jobs that Fallon may perform consistent with her RFC. *See Massachi*, 486 F.3d at 1153–54 & n.19.

5.    ***Remedy.*** Because this is not one of the "rare circumstances" that merits remand for an immediate award of benefits under our credit-as-true rule, we remand for further proceedings. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (quotation omitted).

**REVERSED and REMANDED for further proceedings.**